NELSON HOWARD, ADMINISTRATOR, *vs.* WILLIAM M.
REDDEN ET AL.

Second Judicial District, Norwich, April Term, 1919.

PRENTICE, C. J., RORABACK, WHEELER, BEACH and GAGER, Js.

An overhanging cornice fell and killed the plaintiff's intestate, a pedes-
   trian on the sidewalk. In an action for damages, brought against
   the building contractor or carpenter who built the cornice some
   years before it fell, and the owner of the building, the complaint
   alleged negligence of the builder in fastening the cornice, and of
   the owner in failing to inspect its condition and guard against the
   danger resulting from rust and rot, rain and other natural causes,
   which led to its fall. *Held:*—

1. That whether the cornice was adequately fastened to the building
   or not originally, it was quite apparent from the allegations of the
   complaint that the proximate cause of its fall was its rusted and ·
   rotten condition due to exposure to the weather, and the super-
   vening negligence of the owner in failing to inspect and remedy
   that condition; and therefore a demurrer to the complaint, based
   substantially upon that ground, filed by the defendant contractor,
   was properly sustained.

2. That the cornice was not a nuisance *per se*, as contended by the
   plaintiff, but became dangerous only because its natural and in-
   evitable deterioration was not foreseen and guarded against by the
   owner of the building.

3. That the allegation in the complaint, to the effect that each and
   every negligent act or omission therein relied upon was "a prox-
   imate and efficient cause" of the falling of the cornice, was simply
   the statement of a legal conclusion, and added nothing to the
   previous averments of fact.

Argued April 30th—decided July 16th, 1919.

ACTION to recover damages for the death of the plain-
tiff's intestate, alleged to have been caused by the neg-
ligence of the defendants, brought to the Superior Court
in New London County where a demurrer to the sub-
stituted complaint, filed by the defendant Gilbey, was
sustained (*Keeler, J.*) and, upon the refusal of the plain-
tiff to plead further, judgment was rendered in favor

of the defendant Gilbey, from which the plaintiff appealed. *No error.*

The material facts, abbreviated from the substituted complaint, are alleged as follows:—

Redden owned a four-story brick building fronting on Bank Street, a much used street in New London, the front wall of the building being built upon the boundary line between the lot and Bank Street. Upon the top of the front wall was a wooden cornice three feet wide and thirty-six feet long, overhanging the sidewalk and weighing eight hundred pounds. The defendant Gilbey built this cornice for Redden. It was carelessly, negligently and insecurely fastened to the wall, was unsafe and liable to fall by its own weight, and, by reason of such liability, was intrinsically dangerous to persons passing on Bank Street. The defendants did not use beams and bolts of sufficient size and strength in fastening the cornice to the wall, but negligently nailed the cornice with wire and cut nails of small and insufficient size, to weak and insufficient furring strips, which strips were carelessly nailed to weak and insufficient pieces of timber built into the wall. The cornice was covered by a tin roof, carelessly flashed to the brick wall so that rain-water ran under it and rotted away the woodwork and furring strips and rusted away the nails.

The cornice was so constructed by said Gilbey that it would by natural action of the elements and from natural causes alone, and by reason of its own weight and insecure fastening, fall to the sidewalk.

The tin roof by natural causes became worn and rusted, and rain-water and other elements leaked into the cornice and rotted the woodwork and furring strips on the inner side of the cornice, and rusted away the nails by which the cornice was fastened to said furring strips and building.

The defendant Redden negligently and carelessly failed and neglected to inspect the cornice to determine its condition, and negligently and carelessly failed and omitted to remove the cornice from said building.

Because of the said negligences, acts and omissions of the defendants, the cornice, on September 16th, 1917, fell from its place on the front of said building upon the plaintiff's intestate, then lawfully traveling on said highway in the exercise of due care and caution, and so injured him that he died about an hour and a half after being struck.

The plaintiff further alleged: "Each of the acts, negligences and omissions of the defendants contributed to the fall of said cornice and each of said acts, negligences and omissions was a proximate and efficient cause, without the operation of which the falling of the cornice would not have happened."

To this complaint the defendant Gilbey demurred for the following reasons: "1. The defendant, George Gilbey, was under no duty to the plaintiff for the reason that his contract to build was with the owner of the land and building, William H. Redden, and said building and cornice were constructed and completed long before the injury to the plaintiff. 2. Because the negligence of the defendant, George Gilbey, was not the proximate cause of the injury to the plaintiff, but was consequential and remote. 3. Because the defendant, George Gilbey, had made no representations to the plaintiff that said cornice was safe or properly constructed; had no contractual or other relations with him, and had no occupation of said building or control over it or duty toward it at the time of said accident, and for a long time prior to that. 4. Because it appears that there is no causal connection between the negligence of the defendant, George Gilbey, and the injury to the plaintiff. 5. Because it does not appear

from the complaint that the defendant, George Gilbey, owed any duty to the plaintiff."

The demurrer was sustained, the plaintiff refused to plead further, and judgment was rendered in favor of the defendant Gilbey. The plaintiff appeals, assigning error in sustaining the demurrer.

*Frank L. McGuire*, for the appellant (plaintiff).

*Nathan Belcher*, for the appellee (defendant Gilbey).

GAGER, J. The complaint is somewhat obscure, and it requires close inspection to accurately get at the real relation of the various acts set forth.

The only connection the defendant Gilbey had with the cornice, is that at some time he constructed the cornice for the defendant Redden, owner of the building. For some reason, probably because it would not help the plaintiff's case, the complaint contains no allegation of time except that Redden owned the building on the day of the accident. The complaint necessarily imports, however, that at some considerable time prior to the accident Redden owned the building, and that he then employed Gilbey to construct the cornice. We do not think that counsel for the plaintiff would claim that in the climate of New London tin roofs and nails rust out, and woodwork rots, overnight. It takes a considerable period of time, probably some years, for such rusting and rotting as to render these materials useless or insufficient for building purposes. At any rate, it appears, and is so alleged in the complaint, that the cornice remained in place until by natural causes, rain-water and other elements, the rusting and rotting took place, with the final result that, due to such rusting and rotting, the cornice fell; and it further appears, and is so alleged, that defendant Redden failed and

neglected to inspect the cornice to determine its condition, and failed and neglected to remove the cornice.

Whether Gilbey in doing the work was acting as independent contractor, or as the servant of Redden, does not clearly appear. We assume that it is intended to hold Gilbey as a contractor. It is not alleged that Gilbey had anything whatever to do with the building after the construction of the cornice. The necessary inference of fact is that he did not. His is the ordinary case of a contractor or carpenter doing a job upon a building at the request of the owner, and thereafter having nothing to do with it. It is further to be presumed, from the acceptance and use necessarily implied from the other allegations of the complaint, that the cornice was constructed as the owner directed, or at least to his satisfaction. Whether the original contract was well done or not, it distinctly appears, and this is the controlling factor in the case, that the fall of the cornice was not due to the condition the contractor left it in, but to the neglect of the owner, Redden, to inspect and guard against the result of rusting and rotting that inevitably takes place in every structure in which nails, tin, and wood are used. The structure stayed up as long as the materials did not rust and rot out.

The reasoning in *Miner* v. *McNamara*, 81 Conn. 690, 72 Atl. 138, is conclusive of the present case. In that case the Hubbell Company was alleged to have negligently constructed a warehouse. It was delivered to the owner, who knew of the negligent construction and that the building was unsafe. The owner leased to the plaintiff without disclosing the condition of the warehouse, and the building collapsed from its inherent weakness about a month after plaintiff took possession. This presented a much stronger case for the plaintiff than the present, for the collapse was due to conditions existing when the Hubbell Company turned over the building to

the owner, and was not due to a supervening natural deterioration negligently allowed by the owner to proceed to the point of collapse, when reasonable inspection and care by the owner would have prevented it. Yet this court held that the Hubbell Company was not liable, on the ground that its negligence was not the proximate cause of the collapse, but that the failure of the owner to notify the lessee of the defective condition was negligence, and the proximate cause of the collapse. The court said (p. 693): "Whether this defendant (The Hubbell Building Company) is liable for the plaintiffs' injury, depends upon whether its negligent and unlawful act was the proximate cause of that injury. 'That only is a proximate cause of an event, juridically considered, which, in a natural sequence, unbroken by any new and intervening cause, produces that event, and without which that event would not have occurred. *Smith* v. *Connecticut Ry. & Ltg. Co.*, 80 Conn. 268, 270, 67 Atl. 888. The last conscious agent in producing the injury is the party liable for it. 1 Beven on Neg. in Law (3d Ed.) 53. The law does not search for the more remote agencies by which the injury was brought about or made possible."

It appears from the present complaint that the fall of the cornice was due to the action of rust and rot, and it is in terms alleged that "the defendant Redden negligently and carelessly failed and neglected to inspect the cornice to determine its condition, and negligently and carelessly failed and omitted to remove said cornice from said building." A contractor or workman is surely not the insurer of the everlastingness of the materials of a cornice built by him. The owner, or occupier, as the case may be, is under obligation to give such inspection and make such repairs as will at least preserve the structure from the danger-

ous effects of natural causes, wind, rain, dampness, which no foresight of construction can guard against.

But the plaintiff contends that this is a case of a nuisance *per se*, and therefore the contractor is liable in any event. It is unnecessary to discuss the law in such cases, for the reason that the allegations do not show a nuisance *per se*, and do show a supervening proximate cause. There is, to be sure, an allegation that the cornice was so constructed as to be a constant menace, as liable to fall by its own weight due to insecure fastening. Whether this was so or not, the fall which in fact occurred was of a structure quite different from that left by the builder. So long as it remained as left by him it did not fall. The fall was due to rust and rot occurring from natural causes and which the complaint says should have been guarded against by the owner by inspection and repair or removal, and which he neglected. The most alleged against Gilbey is negligence, and then it is shown that the subsequent negligence of the owner brought about the fall.

There is no similarity between the facts of this case and of those cited by the plaintiff. *House* v. *Metcalf*, 27 Conn. 630, was the case of an overshot water-wheel built near the road, unenclosed and uncovered, and calculated by its very nature to frighten horses. The danger was constant from the time the wheel was constructed, and it was that identical danger which caused the accident.

The bridge cases, of which *O'Brien* v. *American Bridge Co.*, 110 Minn. 364, 125 N. W. 1012, 32 L. R. A. (N. S.) 980, may be taken as an illustration, are cases where the very method of construction made the bridge liable to collapse at any time, and it did collapse because of the defects in its construction alone. The very danger left by the contractor, without any intervening cause, materialized in the collapse. We may apply to

the claim of nuisance *per se* the words of Hobson, C. J., in *Simons* v. *Gregory*, 120 Ky. 116, 124: "But the doctrine of these [exceptional] cases is not to be applied to the fall of an elevator, which is charged to be due concurrently to its defectiveness, the unskillfulness of the operator, and his gross neglect in using it, for an elevator which, after being run for months, breaks down by reason of its being operated by an inexperienced and unfit person, and by reason of his gross negligence, cannot be said to be imminently dangerous to human life. Such an elevator cannot be distinguished from a defective steam boiler, a defective coach for the carriage of passengers, a defective wall, defective shelving in a store room, or a defective chandelier in a hotel, or the other things for which the maker was held not to be responsible to third parties injured thereby."

A cornice is not *per se* a nuisance. There was no imminent peril involved in its ordinary use with ordinary care. The peril occurred because of the lack of ordinary care. *O'Brien* v. *American Bridge Co.*, 110 Minn. 364, 125 N. W. 1012, 32 L. R. A. (N. S.) 980. The original negligent construction did not cause any harm, until the owner's negligence with respect to inspection and repair occurred, and the defendant Gilbey confessedly was in no way bound to anticipate or assume responsibility for this.

This ruling of our court is amply supported by the authorities. In *Curtin* v. *Somerset*, 140 Pa. St. 70, 21 Atl. 244, 23 Amer. St. Rep. 221, a contractor was sued for damages caused by the defective construction of a porch built for a hotel company. Upon the point of liability of the contractor, the court (p. 78) cited with approval Wharton on Negligence. "The true rule, which we think applicable to it, may be found in Wharton on Negligence (2d Ed.) § 438. It is as follows: 'There must be causal connection between the negligence

and the hurt; and such causal connection is interrupted by the interposition, between the negligence and the hurt, of any independent human agency. . . . Thus a contractor is employed by a city to build a bridge in a workmanlike manner; and after he has finished his work, and it has been accepted by the city, a traveler is hurt when passing over it by a defect caused by the contractor's negligence. Now the contractor may be liable on his contract to the city for his negligence, but he is not liable to the traveler in an action on the case for damages. The reason sometimes given to sustain such a concluson is, that otherwise there would be no end to suits. But a better ground is that there is no causal connection . . . between the traveler's hurt and the contractor's negligence. The traveler reposed no confidence in the contractor, nor did the contractor accept any confidence from the traveler. The traveler, no doubt, reposed confidence in the city that it would have its bridges and highways in good order; but between the contractor and the traveler intervened the city, an independent responsible agent, breaking the causal connection.'"

The same section is cited with approval in the comparatively recent case of *Thornton* v. *Dow*, 60 Wash. 622, 635, 111 Pac. 899, 904, 32 L. R. A. (N. S.) 968, 977.

By reason of the rule of proximate cause adopted, it will not be necessary to discuss further the general rule of nonliability of the contractor after having turned over the work to the owner, nor the few exceptions recognized in the cases. Although this rule has received attention, referring more especially to the cases collected in 14 R. C. L. p. 107, § 42, and the notes in 26 L. R. A. 504, 32 L. R. A. (N. S.) 968, and L. R. A. 1915 E, 766, we find nothing that leads us to question the soundness of the rule above adopted. The reason for the general rule, stated in terms supporting our con-

clusion, is well stated in the note referred to in 32 L. R. A. (N. S.) 969, as follows: " 'But the better reason,' said Mr. Justice Johnson, in *Casey* v. *Wrought Iron Bridge Co.*, 114 Mo. App. 47, 89 S. W. 330, 'is that ordinarily in such cases there is found a break in the causal connection between the contractor's negligence and the injury. [Wharton, Neg. 368.] It is the intervening negligence of the proprietor that is the proximate cause, and not the original negligence of the contractor. By occupying and resuming possession of the work, the owner deprives the contractor of all opportunity to rectify his wrong. Before accepting the work as being in full compliance with the terms of the contract, he is presumed to have made a reasonably careful inspection thereof and to know of its defects; and if he takes it in the defective condition, he accepts the defects and the negligence that caused them as his own, and thereafter stands forth as their author. When he accepts work that is in a dangerous condition, the immediate duty devolves upon him to make it safe; and if he fails to perform this duty, and a third person is injured, it is his negligence that is the proximate cause of the injury. His liability may be incurred either from his substitution for the contractor, or from his neglect to repair.' "

But the plaintiff, referring to the doctrine of the "new conscious agent," as mentioned in *Miner* v. *McNamara*, 81 Conn. 690, 72 Atl. 138, says, in substance: "Redden is not a new conscious agent. He is one of the original wrongdoers, creators of a nuisance. His failure to inspect is an act of omission, not of commission. It is a concurring rather than a proximate cause of the injury." This claim is hardly even plausible. Acts of omission equally with acts of commission are in law acts of a conscious agent. Even if Redden was an original wrongdoer, the injury was by the terms

of the complaint due to his subsequent neglect as its proximate cause. The objection would have applied with equal force in *Miner* v. *McNamara*. Negligent omission to give notice was the act of the conscious agent on which that case turned.

Finally, the plaintiff says he has avoided the proximate cause doctrine by the allegations of the thirteenth paragraph of his complaint, that each and every act, omission and negligence stated, was "a proximate and efficient cause, without the operation of which the falling of the cornice would not have happened." We quite agree with the trial court, that this is simply a statement of legal conclusions. It adds nothing to the previous allegations of fact. Further, the paragraph is a striking illustration of the not infrequent confusion of thought with reference to conditions and legal cause.

The court correctly sustained the demurrer of the defendant Gilbey upon the second and fourth grounds, and we have no occasion to consider the others.

There is no error.

In this opinion the other judges concurred.