JOSEPH F. DEL GAUDIO ET AL. *v.* ARTHUR B. INGERSON
ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued June 8—decided July 12, 1955

*James B. Hallett,* with whom, on the brief, was *Warren Maxwell,* for the appellants (defendants).

*James F. Dawson* and *Leonard G. Tracy,* for the appellees (plaintiffs).

O'SULLIVAN, J. The plaintiffs, husband and wife, brought this action to recover for damage resulting from a fire at their home on January 13, 1951. The complaint was in two counts, the first sounding in breach of warranty and the second, in negligence. The original defendants were Arthur B. and Robert D. Ingerson, brothers doing business as the Ingerson Heating Company, and Bernard Friedman. Friedman was the president of a building concern and corporate developer known as Pinecrest, Inc., but he was sued only in his individual capacity. He was granted a nonsuit at the close of the plaintiffs' case. The court found the issues for the Ingersons on the first count but against them on the second. In considering their appeal, we shall refer to them as the defendants.

The finding, which is not subject to correction, recites the following facts: In July, 1950, the defendants agreed to install electrically operated oil burners in twenty-seven new homes being erected in an area under development by Pinecrest, Inc., in the town of Rocky Hill. The defendants purchased the burners from a manufacturing concern in Syracuse, New York, and were paid for them by Pinecrest, Inc., as the work of installation in each house

was completed. On October 9, 1950, the plaintiff husband entered into an agreement to buy from Pinecrest, Inc., one of the houses then in the process of construction. It was not until November 20 that the defendants installed a burner in that house. Since there was no cellar, the entire heating unit was placed in a utility closet on the ground floor. After attaching the burner to the other part of the unit and making the necessary electric connections, one of the defendants tested and put the burner into operation. Thereafter, neither defendant returned to check how it was working.

The plaintiffs took title to the premises on December 28, 1950. From November 20, the date of installation, until the following January 10, when they moved into the house, the burner was in operation most, if not all, of the time. The heat was kept high because the unfinished house was being decorated and the floors varnished. From January 10 to January 13, the plaintiffs did not touch the burner. During those three days, the burner's cycle for heating the house covered periods of up to two hours, although, to get ample heat, the burner should have run only from five to twenty minutes. A cycle of two hours indicated that not enough heat was generated in the furnace. This defective operation of the burner was caused by a fouling of the electrodes or by the presence of foreign matter in the nozzle of the burner, thus giving rise to faulty ignition and to a low or distorted flame in the combustion chamber.

The plaintiff husband left for work about 6 a.m. on the morning of January 13. Less than an hour later, the plaintiff wife, while in the bathroom adjacent to the utility closet, heard a noise or rumble which she described as a "poof." She went into the living room and, on returning to the bathroom, felt a rush of hot

air coming through an air duct. She then went into the kitchen, where smoke was pouring out of the utility closet. After first turning off the emergency switch, she opened the closet door and saw flames coming from the steel housing of the burner. The housing had dropped several inches and there was a hole in it about the size of a half dollar. The fire spread rapidly to other parts of the house, and both the building and its contents were badly damaged.

The plaintiffs alleged in their complaint that the "fire was caused by the defendants in that they negligently, carelessly and improperly installed said oil burner." The court concluded that the defendants were negligent not only in the manner alleged but also because they failed to inspect the burner after it had been installed. Passing the question whether the latter conclusion was permissible under the allegations of the complaint, we are confronted by a finding incapable of supporting either conclusion. While it is true that the court found that the improper and defective operation of the burner from January 10 to January 13 was caused by a fouling of the electrodes or by the presence of foreign matter in the nozzle, there are no facts before us to indicate that the defects existing during that period could have been eliminated or made impossible of occurrence by the exercise of reasonable care in the installation of the burner or by an inspection within a reasonable time after the installation.

The conclusion of the court that the defendants were negligent as stated was a conclusion of an ultimate fact, based upon the subordinate facts found. Maltbie, Conn. App. Proc., § 80; see *Cohn* v. *Hartford,* 130 Conn. 699, 706, 37 A.2d 237; *Lippitt* v.

*Ashley,* 89 Conn. 451, 462, 94 A. 995. As such, it can be attacked by inquiring whether it was illegally or illogically drawn from the subordinate facts. *Gowdy* v. *Gowdy,* 120 Conn. 508, 509, 181 A. 462; *City Bank & Trust Co.* v. *Ruthinian Greek Catholic Church,* 102 Conn. 609, 611, 129 A. 785. On that basis, the court could not logically conclude that the defendants were negligent.

Since a new trial must be had, and in order to reduce the possibility of a further appeal from the judgment rendered therein, we think it expedient to discuss certain legal principles which are involved in the litigation. The status of the defendants with respect to the installation of the burner was that of independent contractor. After the work of such a contractor has been completed and accepted by the owner, the contractor is ordinarily not liable to third parties, such as the plaintiffs, for damage to property subsequently suffered by reason of the condition of the work, even though he, the contractor, was negligent in carrying out the contract. *Bogoratt* v. *Pratt & Whitney Aircraft Co.,* 114 Conn. 126, 142, 157 A. 860; *Howard* v. *Redden,* 93 Conn. 604, 612, 107 A. 509; see notes, 41 A.L.R. 8, 10, 123 A.L.R. 1197. This principle, however, is subject to certain exceptions, one of which is recognized with approval in the *Bogoratt* case, supra, where it is stated (p. 142) in this manner: "[W]here the work done and turned over by the contractor is so negligently defective as to be imminently dangerous to third persons [who] he knew, or ought to know, would use it, he remains liable, even after the completion of his work and its acceptance by the contractee, to third parties injured as the result of his negligence if he knew, or, in view of the peculiar circumstances of the case, should have known the dangerous condition by

him created, and the contractee had no knowledge of a condition or defect so concealed that reasonable inspection would not have discovered it." The foregoing principle is applicable to the specification of negligence alleged in the complaint.

As we have previously pointed out, the plaintiffs did not allege, as a further specification, that the defendants failed to inspect the burner after it had been installed by them. If, at the new trial, it should develop, after amending the complaint, that the plaintiffs rely upon a lack of inspection, the appropriate rule to apply is that the defendants were burdened with the duty of making subsequent inspections only if, in the exercise of reasonable care, they should have known, when the installation of the burner was completed, that some defect was likely to develop which would make the apparatus imminently dangerous.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.