ANNE S. COBURN ET AL. *v*. LENOX HOMES, INC., ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued June 10—decision released October 18, 1977

*Peter J. Strassberger,* for the appellants (plaintiffs).

*Warren P. Joblin,* for the appellee (named defendant).

Longo, J.  The plaintiffs brought this action seeking damages from Lenox Homes, Inc., hereinafter referred to as the defendant, arising from

the failure of a septic system installed by the defendant. The defendant successfully demurred to the complaint and the plaintiffs have appealed, challenging the action of the court in sustaining the demurrer.

By agreement dated March 16, 1972, the defendant agreed to construct a residence for James and Joyce Buenger. On June 14, 1974, the Buengers contracted to sell the premises to the plaintiffs, who ultimately purchased and occupied the premises and discovered the faulty septic system.

In the first count of their complaint, the plaintiffs alleged that, under General Statutes § 52-563a, they were protected by an implied warranty from the defendant. General Statutes § 52-563a states: "The issuance by the building department of any municipality of a certificate of occupancy for any newly constructed single-family dwelling shall carry an implied warranty to the purchaser of such dwelling from the vendor who constructed it that such vendor has complied with the building code or the customary application and interpretation of the building code of such municipality. No action shall be brought on such implied warranty but within three years next from the date of the issuance of such certificate of occupancy." The plaintiffs argue that since they are purchasers of the dwelling within three years of the issuance of a certificate of occupancy,[1] they fall within the statute. The plaintiffs have misconstrued the statute. While the language that there shall be "an implied warranty to the purchaser of such dwelling from the vendor who constructed it" at first seems ambiguous, upon

[1] The certificate of occupancy was issued on April 10, 1972, by the building inspector of the town of Wilton to the defendant Lenox Homes, Inc.

closer reading it appears that the legislature intended that the implied warranty would run from the vendor who constructed the dwelling to the person who purchased the dwelling from that vendor. This reading is buttressed by the subsequent clarifying action of the legislature in defining "purchaser" for purposes of General Statutes § 52-563a as "the original buyer, his heirs or designated representatives." 1975 Public Acts, No. 75-637, § 1. We are also unpersuaded by the plaintiffs' suggestion that the three-year limit within which actions must be brought on the warranty supports the interpretation that an implied warranty shall extend to any purchaser of the house within three years of the issuance of a certificate of occupancy. Rather, the three-year limitation was clearly intended to operate as a statute of limitations which does not define the substantive rights of the parties, but only restricts the period within which those substantive rights must be asserted. The plaintiffs would have us read into the definition of "purchaser" the law of negligence as it has developed since *MacPherson* v. *Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050. Since it appears clear to us that the legislature, which recently acted on the matter, did not do so, we should not. It was, therefore, proper for the court to sustain the demurrer to the first count of the plaintiffs' complaint.

The second count of the plaintiffs' complaint sounded in contract. The proposition that one who was neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract merits little discussion. *Knapp* v. *New Haven Road Construction Co.*, 150 Conn. 321, 189 A.2d 386. We can similarly dispose of the section of the plaintiffs' third count which

alleges that the plaintiffs have an action based on express warranties in the contract between the defendant and the original purchaser.

More difficult questions are posed by those parts of the third and fourth counts of the plaintiffs' complaint which allege actions against the defendant on theories of implied warranty and negligence.

The doctrine of implied warranty has been extended in recent years to protect the consumers of numerous products from the effects of dangerous or defective items. This trend has been extended by many states to the sale of new homes. We recently noted "that the overwhelming trend in recent decisions from other jurisdictions, as well as in our own Superior Court, is to invoke the doctrine of implied warranty of workmanship and habitability in cases involving the sale of new homes by the builder. See, e.g., *City of Philadelphia* v. *Page,* 363 F. Sup. 148 (E.D. Pa.); *Vernali* v. *Centrella,* 28 Conn. Sup. 476, 266 A.2d 200; *Theis* v. *Heuer,* 149 Ind. App. 52, 280 N.E.2d 300; *Yepsen* v. *Burgess,* 269 Ore. 635, 525 P.2d 1019; *Elderkin* v. *Gaster,* 447 Pa. 118, 288 A.2d 771; *Padula* v. *J. J. Deb-Cin Homes, Inc.,* 111 R.I. 29, 298 A.2d 529; *Hollen* v. *Leadership Homes, Inc.,* 502 S.W.2d 837 (Tex. Civ. App.), and cases collected at 25 A.L.R.3d 383, 413–19, as supplemented." *Scribner* v. *O'Brien, Inc.,* 169 Conn. 389, 402–403, 363 A.2d 160.

The cases recognizing an implied warranty covering homes have almost uniformly limited recovery to actions by the original purchaser against the builder-vendor of a new home. See, e.g., cases collected at 25 A.L.R.3d 383, 413–19. We find these limits to be well founded and fatal to the plaintiffs' implied warranty claim. The plaintiffs in this case

were not in privity with the builder-vendor of the house. They bought it from the original purchaser some two years after the original agreement to construct the home. The requirement of privity between the plaintiff and the defendant in implied warranty cases has been eroded by socioeconomic policy considerations in recent years. The doctrine was most seriously undermined by recognition by the courts of the development of mass marketing structures in which the manufacturer grew increasingly remote from the consumer through the development of intermediary dealers in products. Courts recognized that manufacturers created demand for their products through advertising in which they made representations of quality and fitness for particular uses. When, however, those representations proved to be false, manufacturers sought protection behind a wall of intermediary dealers who destroyed the chain of privity between the consumer who was injured by the product and the manufacturer who was responsible for its defective or dangerous condition. The requirement of privity was further eroded by the recognition that many products were designed for use by individuals who were not the purchasers. This doctrine was initially developed in a line of cases dealing with defective food and drink, but was eventually expanded to include products for intimate bodily use and finally to such things as automobiles; *Henningsen* v. *Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A.2d 69; and building materials. *Spence* v. *Three Rivers Builders & Masonry Supply, Inc.*, 353 Mich. 120, 90 N.W.2d 873; see, generally, Prosser, Torts (4th Ed.) § 97.

Similar justification does not exist for the destruction of the privity requirement in the case at hand. This is not a mass marketing situation in

which the defendant has attempted to insulate itself from liability behind a wall of intermediaries. Rather, the defendant contracted directly with the original purchaser and constructed the house for and sold it to the original purchaser, who subsequently sold it to the plaintiffs. A house which is not the product of a mass marketing scheme or which is not designed as a temporary dwelling differs from the usual item to which the principles of strict liability have generally been applied. It is not an item which generally changes owners or occupants frequently. A home is generally a long-term investment for a purchaser and it is not reasonable to impose strict liability on a builder-vendor who may not have reasonably been expected to anticipate a change in ownership.

Finally, we must turn to General Statutes § 52-563a. A determination that the builder-vendor should be liable to subsequent purchasers under an implied warranty theory for defective construction requires a policy determination that the builder-vendor should be held liable, regardless of fault, for economic losses. In other words, such a determination requires a judgment that the cost of such losses should fall on the class of builder-vendors. While that determination may properly be made by a court in the exceptional situations described above and under the broad socioeconomic pressures which have led to the general growth of theories of strict liability, a judicial extension of implied warranty theory is not appropriate here. The legislature, the forum in which socioeconomic pressures are most effectively gauged and expressed, has provided for a limited warranty, which it apparently felt properly allocated the burden of economic loss between builder-vendors and the purchasers of houses. We

must give appropriate deference to that policy deci-
sion and decline to extend liability under a warranty
theory from the builder-vendor to a subsequent pur-
chaser of a house.

We do, however, conclude that it was error for
the court to sustain the defendant's demurrer to the
fourth count of the plaintiffs' complaint, which
sounds in negligence.[2] This court, in *Scribner* v.
*O'Brien, Inc.,* 169 Conn. 389, 363 A.2d 160, sustained
the imposition of liability for negligent construction
on a builder-vendor in a suit brought by the original
purchaser of the dwelling. The court stated
(p. 400): "When the defendants undertook to erect
a dwelling and provide a driveway for the plaintiffs
they were under a duty to exercise that degree of
care which a skilled builder of ordinary prudence
would have exercised under the same or similar
conditions." The fact that we are dealing here with
a suit by a subsequent purchaser is not fatal to the
negligence claim since the requirement of privity
should only be applicable to actions growing out of
contract theory and should be irrelevant to tort
actions. The revolution in the law of negligence
which began with *MacPherson* v. *Buick Motor Co.,*
217 N.Y. 382, 111 N.E. 1050, and which resulted in
recognition that privity was not a legitimate concern
in negligence actions has finally produced the gen-
eral rule "that the seller is liable for negligence in
the manufacture or sale of any product which may
reasonably be expected to be capable of inflicting
substantial harm if it is defective." Prosser, op. cit.,
§ 96, p. 643. The Supreme Judicial Court of Mas-
sachusetts, in a suit by a purchaser of a house

---

[2] The pleading is broad enough to support a claim in negligence.
The parties argued in negligence and the court decided on that basis.
We, therefore, consider it accordingly.

against the builder arising from a faulty septic system, stated: "There is no sound reason why he [the purchaser] should be prevented from recovering for property damage or personal injury merely because he is not in privity with the builder or contractor responsible for such work. We therefore hold that a builder or contractor may be liable for injuries or damage caused by his negligence to persons with whom he has no contractual relation and even though his work is completed and accepted by the owner before the injuries or damage occurred. Liability will be imposed, however, only if it is foreseeable that the contractor's work, if negligently done, may cause damage to the property or injury to persons living on or using the premises." *McDonough* v. *Whalen,* 365 Mass. 506, 512, 313 N.E.2d 435. We agree with the Massachusetts court that "the ordinary person buying such a house is in no better position to discover hidden dangers caused by the negligent construction than is the purchaser of a defective bottle of perfume, *Carter* v. *Yardley & Co., Ltd.* . . . [319 Mass. 92, 64 N.E.2d 693] or of an automobile, *MacPherson* v. *Buick Motor Co.,* 217 N.Y. 382 . . . [111 N.E. 1050]." Ibid. It is clear that a defectively constructed house is likely to result in damage to the owner and there is no reason why the builder-vendor should not be liable for the effects of his negligence if they were foreseeable. As we stated in *Orlo* v. *Connecticut Co.,* 128 Conn. 231, 237, 21 A.2d 402: "The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. *Botticelli* v. *Winters,* 125 Conn. 537, 542 [7 A.2d 443]. . . . [T]he test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anti-

cipate that harm of the general nature of that suffered was likely to result?" *Neal* v. *Shiels, Inc.,* 166 Conn. 3, 12–13, 347 A.2d 102; *Connecticut Savings Bank* v. *First National Bank & Trust Co.,* 138 Conn. 298, 303–304, 84 A.2d 267. Whether the defendant in this case is liable will depend on the resolution of questions requiring factual development.

Since the fourth count of the plaintiffs' complaint stated a cognizable cause of action in negligence, it was error for the court to sustain the demurrer.

There is error, the judgment is vacated and the case is remanded with direction to overrule the demurrer as to the fourth count and to proceed according to law.

In this opinion LOISELLE, BOGDANSKI and SPEZIALE, Js., concurred.

HOUSE, C. J. (dissenting). I agree with the conclusion of the majority opinion that the trial court properly sustained the demurrer of the defendant Lenox Homes, Inc., addressed to the first three counts of the amended complaint, but I do not agree that it erred in sustaining the demurrer to the fourth count and would find no error in the judgment from which the appeal was taken.

I find nothing in the allegation of the fourth count which would make inapplicable "the well-established rule that where the work of an independent contractor is completed, turned over to, and accepted by the owner, the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work, even though he was negligent in carrying out the contract." *Bogoratt* v. *Pratt & Whitney Aircraft Co.,* 114 Conn. 126, 142, 157 A. 860. We have heretofore consis-

tently followed this rule. See *Wright* v. *Coe & Anderson, Inc.,* 156 Conn. 145, 151, 239 A.2d 493; *Del Gaudio* v. *Ingerson,* 142 Conn. 564, 568, 115 A.2d 665; *Howard* v. *Redden,* 93 Conn. 604, 612, 107 A. 509; see also annot., 58 A.L.R.2d 865, and 13 A.L.R.2d 191: "Negligence of building or construction contractor as ground of liability upon his part for injury or damage to third person occurring after completion and acceptance of the work."

I find no error in the judgment of the trial court.