[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed June 30, 1997
On June 11, 1996, the plaintiffs, James Hornyak (Hornyak), and his wife, Anne-Marie Hornyak, and children, Christopher Hornyak, Caitlin Hornyak and Joseph Hornyak (the derivative plaintiffs) filed an eleven count complaint against the defendants, Northbrook Property Casualty Insurance Company (Northbrook) and its employee or agent, Karla Lee, for: breach of contract; breach of the covenant of good faith and fair dealing; violation of the Connecticut Unfair Trade Practices Act (CUTPA); violation of the Connecticut Unfair Insurance Practices Act (CUIPA); negligent infliction of emotional distress; and misrepresentation. On December 10, 1996, the court, Fineberg, CT Page 6720 J., granted the defendants' August 27, 1996, motion to strike all of the counts of the plaintiffs' complaint with the exception of a breach of the covenant of good faith and fair dealing count brought by James Hornyak.
On December 27, 1996, the same plaintiffs filed an amended six count complaint against the same defendants alleging: bad faith (counts one and two); violation of the Connecticut Unfair Trade Practices Act (count three); intentional infliction of emotional distress (counts four and five); and fraud (count six). The plaintiffs claim that on January 19, 1996, James Hornyak was injured while in the course of his employment when he slipped on ice while he was walking from his service van to the office of his employer, St. Pierre Oil Company (St. Pierre). At the time of the accident, the defendant, Northbrook, was the workers' compensation carrier for St. Pierre and was therefore obligated to pay James Hornyak workers' compensation benefits, including paying for physical and aqua therapy. The plaintiffs claim that though Northbrook initially paid benefits to James Hornyak, it then through its agent, Karla Lee, eventually contested his claims and unreasonably delayed payment of those claims. As a result of the defendants' actions regarding James Hornyak's workers' compensation claim, the plaintiffs have brought the present action.
On February 13, 1997, the defendants filed a motion to strike all six counts of the plaintiffs' amended complaint claiming that they fail to state causes of action upon which relief can be granted. On March 12, 1997, the plaintiffs filed a memorandum of law in objection to the defendants' motion to strike. The defendants filed a reply memorandum on March 17, 1997. It is the defendants' motion to strike that is presently before this court.
The function of the motion to strike is to test the legal sufficiency of a pleading. R.K. Constructors, Inc. v. FuscoCorp., 231 Conn. 381, 384, 650 A.2d 153 (1994). The motion to strike is appropriate when challenging the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted. Practice Book § 152; Waters v. Autuori,236 Conn. 820, 825, 676 A.2d 357 (1996). The facts alleged in the complaint are to be construed by the trial court in the most favorable way for the plaintiff. Novametrix Medical Systems,Inc. v. BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25 (1992);Amodio v. Cunningham, 182 Conn. 80, 82, 438 A.2d 6 (1980). CT Page 6721 However, when ruling on a motion to strike, the court is limited and may only rely on the facts alleged in the complaint.Novametrix Medical Systems, Inc. v. BOC Group, Inc., supra,224 Conn. 215; Gordon v. Bridgeport Housing Authority,208 Conn. 161, 170, 544 A.2d 1185 (1988). A pleading must fail if it contains only unsupported conclusions of law without the required facts. Cavallo v. Derby Savings Bank, 188 Conn. 281,285, 449 A.2d 986 (1982).
Count 2: Bad Faith Claim Brought by the Derivative Plaintiffs.
In count two the derivative plaintiffs attempt to set out a bad faith claim against Northbrook. The first 20 paragraphs of count two are virtually identical to count four of the plaintiffs' original complaint which was struck by the court, Fineberg J., for failing to sufficiently plead that the derivative plaintiffs were "parties insured under the subject workers' compensation policy nor parties to the contract." (Memorandum of Decision, dated December 10, 1996, p. 10). In an apparent attempt to conform to Judge Fineberg's ruling, the derivative plaintiffs have added the following three paragraphs to the original bad faith claim:
 21. At all times mentioned herein, the employer had a contract for workers' compensation with the insurance carrier which covered the employer and the plaintiff James Hornyak as an employee of the employer, and provided benefits calculated in part on the number of dependents the employee had.
 22. The Plaintiff James Hornyak was required to file a "WCC-1A" Form which states that "In order for this company to determine your weekly benefit rate . . . you must provide us with the following information." Among other things he was asked to list his dependents. He listed the plaintiffs Ann-Marie, Christopher, Caitlin and Joseph Hornyak. A copy of that WCC-1A is attached hereto.
 23. It was the intention of the employer and the insurance carrier that the insurance carrier should assume a direct obligation to the employees and their dependents, including the plaintiffs, and the plaintiffs would have a right of action against the insurer as evidenced by C.G.S. § 31-343
("As between any such injured employee or his dependent and the insurer . . .") and § 31-340. CT Page 6722
(Emphasis in original.) (Plaintiffs' Amended Complaint, count 2 ¶¶ 21-23).
The defendants have again moved to strike this count, claiming that the derivative plaintiffs "are not parties to or intended beneficiaries of the workers' compensation insurance contract, and therefore cannot assert claims for bad faith." (Defendants' Motion to Strike, ¶ 1).
It is well settled that "one who is neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract." Tomlinson v. Board ofEducation, 226 Conn. 704, 718, 629 A.2d 333 (1993), quotingCoburn v. Lenox Homes, Inc., 173 Conn. 567, 570, 378 A.2d 599
(1977). "A third party beneficiary may enforce a contractual obligation without being in privity with the actual parties to the contract. . . . The ultimate test to be applied in determining whether a person has a right of action as a third party beneficiary is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party beneficiary." (Citations omitted; internal quotation marks omitted.) Gateway Co. v. DiNoia, 232 Conn. 223,230-31, 654 A.2d 342 (1995); Stowe v. Smith, 184 Conn. 194, 196,441 A.2d 81 (1981).
In the present case, even with the additional allegations added to count two, the count still does not evince that the parties to the contract intended that Northbrook should assume a direct obligation to the derivative plaintiffs. Neither do the plaintiffs clearly identify how the additional information in count two demonstrates that the parties to the contract in question intended that Northbrook would assume an obligation to the derivative plaintiffs. A pleading must fail if it contains only unsupported conclusions of law without the required facts.Cavallo v. Derby Savings Bank, supra, 188 Conn. 281. As such, there is no reason to deviate from Judge Fineberg's previous determination that the derivative plaintiffs' claim for bad faith is legally insufficient and the defendants' motion to strike count two is granted.
Count 3: CUTPA Claim Brought by James Hornyak.
In count three the plaintiff, James Hornyak, claims that the defendants have violated the Connecticut Unfair Trade CT Page 6723 Practices Act (CUTPA). See General Statutes § 42-110 et seq. Hornyak claims that "[t]he defendants actions and repeated misconduct is such that their conduct rises to a general business practice to discourage workers' compensation claims, breach its contractual and statutory duties to its insured employers and their employees and deprive said employees of their rights; thereby obtaining an unfair advantage over their business competitors. (Plaintiffs' Amended Complaint, count 3 ¶ 22).
The defendants move to strike this count claiming that "a CUTPA claim against an insurer must satisfy the requirements of CUIPA [the Connecticut Unfair Insurance Practices Act], which provides that multiple violations, including conduct in the handling of other claims, are necessary to support a CUIPA claim." (Defendants' Motion to Strike, ¶ 3).
The defendants claim that proof of a general business practice is required to establish a violation of CUTPA based on an underlying violation of CUIPA. Though the defendants are correct in this assertion, a careful reading of the third count reveals that the plaintiffs do not base their CUTPA claim on allegations of unfair claim settlement practices under CUIPA. Rather the plaintiffs base their CUTPA claim upon alleged violations of certain provisions of the workers' compensation act. See Rotz v. Middlesex Mutual Assurance Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 307488, 13 CONN. L. RPTR. 324 (January 27, 1995) (Hauser, J.).
The plaintiffs claim in count three of their amended complaint that the defendants' actions "were contrary to various provisions of the Workers['] Compensation statutes, including C.G.S. § 31-296 and 31-288." (Plaintiffs' Amended Complaint, count 3 ¶ 20). Additionally, the plaintiffs claim that the defendants have "intentionally frustrated the remedial character and public policy behind the workers' compensation statutes"; (Plaintiffs' Amended Complaint, count 3, ¶ 12); and that "[t]he defendants' actions and repeated misconduct is such that their conduct rises to a general business practice to discourage workers' compensation claims. . . ." (Plaintiffs' Amended Complaint, count 3, ¶ 22). Nowhere in count three do the plaintiffs allege by name, or by statute number, that they are basing their CUTPA claim on the violation of CUIPA.
Therefore, the defendants' claim that count three should be CT Page 6724 stricken because it fails to allege a sufficient underlying CUIPA claim is unfounded. Construing the complaint in a manner most favorable to the plaintiffs, count three sufficiently alleges a cause of action based upon a CUTPA violation and that therefore, the defendants' motion to strike count three is denied.
 Count 5: Intentional Infliction of Emotional Distress Brought by the Derivative Plaintiffs.
In count five the derivative plaintiffs claim damages for the intentional infliction of emotional distress by the defendants. The plaintiffs claim that "[b]y cutting off James Hornyak's aqua therapy, the defendants knew or should have known that their actions were likely to cause emotional distress to Anne-Marie Hornyak; Christopher Hornyak, who later developed symptoms consistent with an ulcer; Caitlin Hornyak; and Joseph Hornyak." (Plaintiffs' Amended Complaint, count 5, ¶ 23).
The defendants allege that the fifth count of the plaintiffs' amended complaint should be stricken because "the defendants owed no duty to them and because the allegations are not sufficient to avoid the exclusive remedy provisions of the Workers' Compensation Act." (Defendants' Motion to Strike, ¶ 2).
The defendants have apparently confused a cause of action for negligent infliction of emotional distress, where there is a requirement that there be a duty owed to the plaintiff,[1] with a cause of action for intentional infliction of emotional distress, where there is no such requirement.[2] Therefore, the defendants' claim that they owed no duty to the derivative plaintiffs is inapplicable and the court denies the defendants' motion to strike the fifth count of the plaintiffs' amended complaint.[3]
Counts 1, 4 6: Bad Faith, Intentional Infliction of Emotional Distress Fraud Brought by James Hornyak.
Counts one, four and six can all be addressed together as the defendants have moved to strike each for essentially the same reason: that the counts are precluded by the exclusivity provision of the workers' compensation act. In count one Hornyak alleges a bad faith claim against Northbrook, claiming that "[i]t was the intention of the employer and insurance CT Page 6725 carrier, that the insurance carrier should assume a direct obligation to the employees of the employer, including James Hornyak." (Plaintiffs' Amended Complaint, count 1, ¶ 6). The complaint also alleges that "[a]s an employee, James Hornyak was an intended beneficiary of the contract of insurance between the employer and the insurance carrier" and that "[i]mplicit in said contract of insurance was a duty of good faith." (Plaintiffs' Amended Complaint, count 1, ¶¶ 8 9). The plaintiff then goes on to list numerous intentional breaches of the insurance contract by Northbrook.
In count four Hornyak makes a claim for intentional infliction of emotional distress. Hornyak claims that the defendants "knew that the plaintiff James Hornyak was medically unable to work yet they repeatedly cut off his benefits and delayed sending out his benefits, including indemnity benefits, thereby depriving him of any income with which to support himself and his family" and that "the defendants knew or should have known that their conduct would likely cause the plaintiff James Hornyak emotional distress." (Plaintiffs' Amended Complaint, count 4, ¶¶ 12 14).
In count six Hornyak makes a claim for fraud, alleging that the defendants made numerous intentional misstatements of fact which caused the plaintiff to incur additional attorney's fees. (Plaintiffs' Amended Complaint, count 6, ¶ 19).
The defendants claim that counts one, four and six should all be stricken because they are all insufficient to avoid the exclusive remedy provision of the workers' compensation act. (Defendants' Motion to Strike, ¶¶ 4, 5 6).
"The purpose of the [workers'] compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer." Jett v. Dunlap,179 Conn. 215, 217, 425 A.2d 1263 (1979). Both the Connecticut Appellate Court and the Connecticut Supreme Court have "consistently held that the exclusivity provisions of the Workers' Compensation Act operate as a total bar to actions brought by employees against their employers for job related injuries."Quimby v. Kimberly Clark Corp., 28 Conn. App. 660, 666,613 A.2d 838 (1992).
The defendants cite to Barrette v. The Travelers Ins. Co.,
CT Page 672628 Conn. Sup. 1, 246 A.2d 102 (1968), as standing for the proposition that an employee is barred by the exclusive remedy provision of the workers' compensation act from suing his employer's workers' compensation carrier.[4] In Barrette, supra,
Judge Grillo held that "the legislature did not intend to differentiate between the employer and the insurer so far as obligations relative to compensation benefits are concerned. The imposing of these duties upon the insurer by this merger of identities carries with it the corresponding right of the insurer to be accorded a right similar to that accorded the employer, i.e., immunity from a common-law negligence action." (Citations omitted.) Id., 5-6.
The Barrette case, however, is easily distinguished from the present case. In Barrette, the plaintiff was suing the workers' compensation insurance carrier of his employer under a theory of negligence for failing to inspect allegedly dangerous machinery, failing to warn the plaintiff of the alleged danger, and failing to provide devices to negate the danger. Id.
Essentially, that plaintiff attempted to sue his employer's compensation insurer, asserting claims of nonfeasance that, had they been brought against his employer, would have fallen under the exclusivity provision of the workers' compensation act.
In the present case, the plaintiffs have made claims against the defendants based on their actions in handling and paying the plaintiff, James Hornyak's, workers' compensation claim. The plaintiffs' claims are "predicated on wrong[s] . . . committed by the insurer long after [the employees] original work related-injury . . ." Carpentino v. Transport Ins. Co.,609 F. Sup. 556, 562 (D.Conn. 1985).
The counts that the defendants are moving to strike, those of bad faith, intentional infliction of emotional distress and fraud, are similar to counts from the original complaint which were struck by the court as being precluded by the exclusivity provision of the workers' compensation act. In his memorandum of decision, Judge Fineberg found that "the sum and substance of the Plaintiffs' [original] allegations [were] simply that [the plaintiffs] were unsatisfied with how the defendants handled James Hornyak's workers' compensation claim." (Memorandum of Decision, dated December 10, 1996, p. 4). He then went on to strike the plaintiffs' breach of contract, negligent infliction of emotional distress and misrepresentation claims explaining that "[s]imply because a claimant is dissatisfied with the CT Page 6727 insurer's actions does not mean that the insurer's actions rise to the level of a tort." (Memorandum of Decision, dated December 10, 1996, p. 5). In making his determination, however, Judge Fineberg noted that "the court need not address whether intentional claims against a workers' compensation insurer fall outside the exclusivity provision of the Workers' Compensation Act, because the Plaintiffs have made no such claims." (Memorandum of Decision, dated December 10, 1996, p. 6).
Construing the amended complaint in a manner most favorable to the plaintiffs, the counts at issue allege intentional conduct on the part of the defendants. That being the case, Judge Fineberg's previous ruling cannot be considered the law of the case and the court is free to make a determination of this issue unrestrained. "In Connecticut, various courts have held that the exclusivity clause [of the workers' compensation act] does not bar a cause of action where it is alleged that a workers' compensation insurer committed an intentional tort or intentionally acted in bad faith with respect to the handling or payment of a plaintiff's claim." Rotz v. Middlesex MutualAssurance Co., supra, 13 CONN. L. RPTR. 324; Carpentino v.Transport Ins. Co., supra, 609 F. Sup. 558; Viviani v. Powell,
Superior Court, judicial district of New Haven at New Haven, Docket No. 384941 (July 15, 1996) (Freedman, J.) (17 CONN. L. RPTR. 372); Bariko v Travelers Insurance Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 291652 (February 1, 1993) (Ballen, J.) (8 CONN. L. RPTR. 316, 8 CSCR 209);Tingley v. Town of Wallingford, Superior Court, judicial district of New Haven at Meriden, Docket No. 236904 (January 11, 1994) (Dorsey, J.) (9 CSCR 132); Hickman v. U.S. Fire Ins. Co., Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 427557 (October 20, 1987) (Spada, J.) (2 CSCR 1177); Maroon v. AetnaCasualty Surety, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 312091 (October 19, 1987) (Satter, J.) (2 CSCR 1175); Massa v. American Mutual Ins. Co., Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 308820 (July 1, 1985) (Byrne, J.) (1 CSCR 469); see also Us v. ITT Hartford,
Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 318814 (June 14, 1995) (Maiocco, J.) (14 CONN. L. RPTR. 333); Sansone v. Esis, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 327409 (January 6, 1993) (Maiocco, J.) (8 CONN. L. RPTR. 171).
The rational behind allowing such actions is that the CT Page 6728 workers' compensation act "only provides for injuries arising out of or in the course of employment. It does not compensate for an otherwise cognizable tort that occurs outside the natural and necessary incident or consequence of the employment." (Emphasis in original; internal quotation marks omitted.)Hickman v. U.S. Fire Ins. Co., supra, 2 CSCR 1177. The act does not authorize benefits for wrongs suffered by an employee unless the wrongs occurred within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment. Carpentino v.Transport Ins. Co., supra, 609 F. Sup. 562. "The public interest requires that wrongs be redressed, that unlawful conduct be discouraged and punished, and that an innocent victim be compensated for his injuries." Id.
Furthermore, the wording of the workers' compensation statute; General Statutes § 31-275 et seq.; reveals that the legislature intended to differentiate between the employer and insurer so far as obligations relative to compensation benefits are concerned. "General Statutes 31-284 (a) states in clear and unambiguous language that `an employer shall secure compensation for his employees as follows. . . .' Further, 31-284b(a) says `any employer . . . who provides accident and health insurance . . . coverage for an employee . . . shall provide to such employee equivalent insurance coverage . . . while the employee is eligible to receive or is receiving workers' compensation payments pursuant to this chapter. . . .'" Sansone v. Esis,Inc., supra, 8 CONN. L. RPTR. 171. "Finally, General Statutes31-293 (a) clearly states that: `When any injury . . . has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may claim compensation under the provisions of this chapter, but the payment or award of compensation shall not affect the claim or right of action of such injured employee against such other person, but such injured employee may proceed at law against such person to recover damages for such injury. . . ." Id. "Based on the foregoing, it is obvious that the legislature did not intend to encompass the term `insurers' within the meaning of `employer'."Id.
"[T]he exclusivity provisions of the [workers' compensation act] is limited to matters surrounding injuries which arise out of and in the course of the claimant's employment and does not, by its express terms, extend to subsequent dealings between the CT Page 6729 claimant and the workers' compensation insurer." Rotz v.Middlesex Mutual Assurance Co., supra, 13 CONN. L. RPTR. 324. "[S]ince the provisions of the workers' compensation act specifically refer to employers and not insurers, the exclusivity provisions of that act do not apply and a plaintiff does therefore have a private right of action against the insurer."Sansone v. Esis, Inc., supra, 8 CONN. L. RPTR. 171. The exclusivity provisions of the workers' compensation act do not apply in the present case and the defendants' motion to strike counts one, four and six are accordingly denied.[5]
GILL, J.