[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE (#125.00)
The plaintiffs in this action state in their second revised complaint that they are seven independent contractors each having an individual product distribution contract with the defendant BE Juices, Inc. (BE). It is alleged these contracts provide each plaintiff with the exclusive distribution rights to certain products manufactured by the defendant Snapple Beverages, Inc. (Snapple) in specifically defined areas in Fairfield County, Connecticut. It is further alleged that BE is, by contract with Snapple, an authorized distributor of Snapple products.
The second revised complaint claims that both BE and Snapple have intentionally or negligently allowed other unknown persons or entities to distribute Snapple products within the areas assigned to the plaintiffs in their contracts with BE. The complaint asserts that BE and Snapple respectively have (1) tortiously interfered with the plaintiffs' business expectancies (first and second counts); (2) breached an express contract (third and fourth counts); (3) violated the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. (CUTPA) (fifth and sixth counts) and (4) breached a fiduciary duty owed to the plaintiffs (seventh and eighth counts). Snapple has moved to strike the contract, CUTPA and breach of fiduciary duty claims against it, i.e. the fourth, sixth and eighth counts.
 Legal Standard
The role of the trial court in ruling on a motion to strike is to examine each count of the complaint which is the subject of the motion, as construed in favor of the plaintiff, to determine whether it states a legally sufficient cause of action. Dodd v. Middlesex Mutual AssuranceCo., 242 Conn. 375, 378 (1997). The party moving to strike a complaint admits, for the purpose of the motion, all well pleaded facts. Mingachosv. CBS, Inc., 196 Conn. 91, 108 (1985). However, legal conclusions contained in a pleading not supported by facts are not binding on the CT Page 11221 moving party or the court. Novametrix Medical Systems, Inc. v. BOCGroup, Inc., 224 Conn. 210, 215 (1992).
 Discussion
A. Breach of Contract
Snapple contends that the fourth count, described by plaintiffs as a claim for breach of express contract, should be stricken because there was no contract between it and the plaintiffs. The plaintiffs argue that the contract between Snapple and BE coupled with contracts between BE and the plaintiffs give rise to a contractual obligation on the part of Snapple to protect the plaintiffs' exclusive distribution rights. Plaintiffs allege that "Snapple, by its contract with BE, granted the plaintiffs the sole and exclusive right to distribute Snapple products within each of the plaintiffs' assigned territory." Second revised complaint, fourth count, ¶ 24. It is further alleged that Snapple allowed BE to reassign the plaintiffs territories or allowed BE to allow such reassignments and that this was contrary to the specific language of the plaintiffs' distribution agreements with BE. Id. ¶¶ 25-26.
It is axiomatic that for a breach of contract action to lie there must be a contract between the parties, or the plaintiff must be the contemplated beneficiary of a contract between the defendant and another. Coburn v. Lenox Homes, Inc., 173 Conn. 567, 570 (1977). Here, plaintiffs do not allege they have a contract with Snapple. They argue in their memorandum opposing the motion to strike that they are third party beneficiaries of the contract between Snapple and BE.
The right of a third party to sue to enforce a contract between two other parties depends on whether the contracting parties intended to assume a direct obligation to that person. Gazo v. Stamford, 255 Conn. 245,261 (2001). "The ultimate test to be applied is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party." Id. In Grigerik v. Sharpe, 247 Conn. 293,313 (1998), the Connecticut Supreme Court emphasized that it is intent ofboth parties to the contract which is controlling.
The court finds that the fourth count insufficiently alleges a breach of contract under a third party beneficiary theory. Nowhere in the count is there an allegation that the parties to the Snapple-BE contract intended to obligate themselves to the plaintiff. Specifically, plaintiffs have not referenced nor cited any portion of the Snapple-BE contract where the requisite intent is to be found. It is not enough that CT Page 11222 plaintiffs expected, or hoped, that Snapple be obligated to them. Such an obligation can only be founded on the contracting parties' intent. Nor can any such intent be inferred from the facts alleged. If, as plaintiffs allege, Snapple was responsible for the unknown distributors selling Snapple products in the Fairfield County area, this would be a breach of Snapple-BE contract which BE would be expected to enforce. On the other hand, if BE were responsible for the unknown distributors, the plaintiffs would have the right to enforce their contracts with BE, a right which they have already asserted in this case. Therefore, there is no factual basis to infer or assume that both BE and Snapple intended the plaintiffs to enforce the BE-Snapple contract.
B. CUTPA
Snapple contends that the sixth count alleging a CUTPA violation should be stricken because its alleged acts did not occur while it was conducting any "trade or commerce".[1] Snapple characterizes the actions the plaintiffs allege it to have undertaken as "the improper granting of a distribution license to another" and that it should not be held responsible under CUTPA for the unfair sales and distribution by others. Snapple Memo, 8, 9. This is an excessively narrow interpretation of the CUTPA violation allegations. The plaintiffs allege that Snapple knew of the allegedly improper distribution of products, purposefully sanctioned it, failed to take steps to curb it, and hindered plaintiffs' efforts to remedy the situation.
Snapple points to Burkert v. Petrol Plus of Naugatuck, Inc., 216 Conn. 65
(1990) as support for its position that only being involved in the granting of a license does not fall within the ambit of an unfair practice within trade or commerce.[2] In Burkert, General Motors, licensed its trademark to certain automatic transmission fluids and was sued as a result of alleged defects in the product. The Connecticut Supreme Court found that GM was not a product seller, leaser, or distributor of the product and its license of the trademark was not trade or commerce. However, the Supreme Court relied on the fact that third-party defendant GM received no income from its leasing program, had nothing to do with the licensed product's formulation, manufacture or distribution and indeed, did not even know the make up of the transmission fluid Id. 68. This is a far cry from this case where Snapple formulates, sells and distributes Snapple products. Therefore, this court holds that the alleged activities, promoting or sanctioning the interference with purported exclusive rights to distribute Snapple products, fall within the trade or commerce of Snapple.
Snapple further contends that the plaintiffs' complaints that someone CT Page 11223 else is selling Snapple products in their territories does not arise to the ascertainable loss requirement for a CUTPA action. Quoting McLaughlinFord Inc. v. Ford Motor Co., 192 Conn. 558, 571 (1984), Snapple states that "increased competition alone, resulting from a practice containing none of the hallmarks of traditionally unfair practices, does not constitute a cause of action under CUTPA." The facts in McLaughlin were quite different from the allegations made by the plaintiffs. The defendant Ford Motor Co. acted openly and above board, albeit arguably in violation of an agreement. Here plaintiffs allege that Snapple acted not only improperly, but secretively, and with the intent of depriving them of their exclusive territories which they had contracted for. These are the "hallmarks" of unfair practices.
Finally, Snapple argues that the plaintiffs lack standing to assert a CUTPA claim because they are not a consumer of Snapple products and are not in a contractual relationship with, or a competitor of, Snapple. This argument lacks merit.
 "CUTPA imposes no requirement of a consumer relationship . . . CUTPA is not limited to conduct involving consumer injury and . . . a competitor or other business person can maintain a CUTPA cause of action without showing consumer injury.
Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 496 (1995)
In light of the language of Larsen and mindful of the strictures ofJackson v. R.G. Whipple, Inc. 225 Conn. 705, 725-26 (1993) ("it strains credulity to conclude that CUTPA is so formless as to provide redress to any person, for any ascertainable harm, caused by any person in the conduct of any trade or commerce") the Connecticut Superior Courts have focused on requiring there be some business relationship or commercial nexus between the parties so that the alleged wrong could interfere with fair and open competition. See Nolfi v. Nelson, judicial district of Fairfield at Bridgeport, CV 99 0360876 (June 12, 2000, Moran, J.);Connecticut Water Company v. Town of Thomaston, judicial district Hartford/New Britain at Hartford, CV 940535590 November 8, 1996, Corradino, J.). In this case, there is a clear connection and relationship between Snapple and the plaintiffs who distribute Snapple products. Therefore, plaintiffs have properly alleged standing and the motion to strike the sixth count, alleging a violation of CUTPA, is denied.
C. Fiduciary Relationship
CT Page 11224
Snapple moves to strike the eighth count which alleges that Snapple breached its fiduciary relationship with the plaintiffs. In the eighth count, the plaintiffs allege that "by virtue of the distributor agreements with BE" they were agents of Snapple. Plaintiffs further allege that they were in a position of inferiority and relied on Snapple to protect their exclusive territorial rights. Second Revised Complaint, Eighth Count, ¶¶ 27-29. A fiduciary relationship may, but not necessarily, arise out of an agency relationship in which one side may have superior knowledge or information. Both parties have made arguments as to the existence or non-existence of an agency relationship by reference to the provisions of the Snapple — BE contract and the BE — plaintiffs contracts. These arguments are improper on a motion to strike which must focus on the allegations of the pleading alone, and not on outside evidence. Faulkner v. United TechnologiesCorp., 240 Conn. 576, 580 (1997). In this case the plaintiffs have alleged the legal conclusion of an agency relationship which is not binding on the court. There are no allegations of fact such as Snapple's control or direction of the plaintiffs' activities, to support that conclusion. Neither are there any allegations that Snapple agreed, expressly or impliedly, to undertake to represent or protect the interests of the plaintiff. See, Dudrow v. Ernst Young, judicial district of Waterbury, CV 98 0144211 (January 14, 1999, Hodgson, J.) (commenting on necessity of facts showing purported fiduciary agreed to represent the interests of another). Lacking allegations of fact sufficient to support the existence of a fiduciary relationship, the eighth count must be stricken.
 Conclusion
That part of the motion of Snapple to strike the fourth and eighth counts is granted. That part of the motion seeking to strike the sixth count is denied.
ADAMS, J.