# MARK GERRITY, EXECUTOR (ESTATE OF JUDITH S. GERRITY) *v.* R.J. REYNOLDS TOBACCO COMPANY ET AL.
## (SC 16545)

Sullivan, C. J., and Borden, Norcott, Vertefeuille and Zarella, Js.

Argued March 11, 2002—officially released April 15, 2003

*David S. Golub*, with whom were *Jonathan M. Levine* and, on the brief, *Eliot Gersten* and *John P. Clifford, Jr.*, for the appellant (plaintiff).

*Gay L. Tedder*, pro hac vice, with whom were *Lawrence F. Reilly, Brien P. Horan, Linda L. Morkan, Lisa A. Sapcoe*, pro hac vice, *Mark R. Seiden*, pro hac vice, *Chris J. Lopata*, pro hac vice, and, on the brief, *Micah L. Hobbs*, pro hac vice, *James R. Fogarty, Andrew P. Nemiroff, Stephen J. Kaczynski*, pro hac vice, *Harold K. Gordon, Edward F. Hennessey, David Thomas Ryan* and *Frank F. Coulom, Jr.*, for the appellees (defendants).

*Richard Blumenthal*, attorney general, and *Stephen R. Park* and *Thomas K. Jones*, assistant attorneys general, filed a brief for the state of Connecticut as amicus curiae.

*Charles D. Ray* and *Alfred A. DiVincentis* filed a brief for the Connecticut Business and Industry Association, Inc., as amicus curiae.

*Opinion*

NORCOTT, J. The sole issue in this case, which comes to us upon acceptance of a certified question from the

United States District Court for the District of Connecticut,[1] is whether a plaintiff, who seeks damages under the Connecticut Product Liability Act, General Statutes § 52-572m et seq., for injuries caused by an allegedly defective product, may also assert a claim under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., for damages alleged to have been caused by the product seller's deceptive scheme to misrepresent and conceal the product defect. More specifically, the certified question requires that we determine whether the exclusivity provision of the product liability act, General Statutes § 52-572n (a),[2] serves to prevent the plaintiff from also asserting a particular claim under CUTPA. Under the circumstances of the present case, we answer the certified question in the negative.[3]

The plaintiff, Mark Gerrity, brought this action as executor of the estate of his mother, Judith S. Gerrity (decedent), in the Superior Court. The defendants, R.J. Reynolds Tobacco Company (Reynolds) and Lorillard

[1] General Statutes § 51-199b, the Uniform Certification of Questions of Law Act, provides in relevant part: "(d) The Supreme Court may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state. . . ."

[2] General Statutes § 52-572n (a) provides: "A product liability claim as provided in sections 52-240a, 52-240b, 52-572m to 52-572q, inclusive, and 52-577a may be asserted and shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product."

[3] The United States District Court for the District of Connecticut asked this court to answer the following question: "Where a plaintiff seeks to recover damages under the Connecticut Product Liability Act . . . for injuries caused by an allegedly defective product, does the exclusivity provision of the [product liability act] preclude an action under the Connecticut Unfair Trade Practices Act . . . based on the product seller's alleged scheme to misrepresent and conceal the defect?" *Gerrity* v. *R.J. Reynolds Tobacco Co.*, United States District Court, Docket No. 3:99CV1329 (D. Conn. April 19, 2001).

Tobacco Company (Lorillard), removed the case to the United States District Court for the District of Connecticut. The District Court certified one question of law to this court, which we accepted. See footnote 3 of this opinion.

The District Court's certification order includes the question of law sought to be answered by this court and a list of six allegations. Although not stipulating to the allegations as facts to be taken as true, the defendants agree that the plaintiff *asserts* these allegations in his complaint. The following summary of the case, as set forth in this opinion, is based on the District Court's certification order and an examination of the plaintiff's underlying complaint.

The plaintiff brought this action in four counts, seeking to recover damages relating to the death of the decedent from lung cancer. Counts one and two are brought under the product liability act and are based on the allegation that the defendants' cigarettes are defective. Counts three and four are based on the allegation that the defendants engaged in unfair trade practices in violation of CUTPA.

The plaintiff alleged that the defendants' cigarettes are defective and unreasonably dangerous because they are addictive and cause lung cancer. The plaintiff also asserted that the defendants designed and manufactured their cigarettes to enhance their addictive nature. The plaintiff further alleged that, prior to June 30, 1969, Lorillard, in an effort to induce consumers to begin and continue smoking, expressly warranted that its cigarettes were safe for their normal use, and that if it were to discover otherwise, it would advise consumers of this fact.

The plaintiff further alleged that the defendants engaged in an industry-wide scheme to defraud consumers into believing that there was a bona fide scientific

dispute regarding the addictive nature of cigarettes and the health hazards associated with them. In furtherance of this scheme, the plaintiff asserted, the defendants issued false public statements, failed to disclose evidence of the addictive nature of cigarettes, increased the nicotine levels in cigarettes, neutralized warnings of smoking related health hazards, and targeted minors in advertising their products. Finally, the plaintiff alleged that the decedent suffered injuries because she relied on Lorillard's express warranty that its cigarettes were safe for their normal use.

In this wrongful death action, the plaintiff seeks compensatory and punitive damages, attorney's fees and costs and other equitable relief. The defendants contend that the exclusivity provision of the product liability act precludes the plaintiff's CUTPA claim. The plaintiff argues, to the contrary, that the exclusivity provision was never intended to preclude a cause of action brought under CUTPA. We conclude that, because an examination of the plaintiff's underlying complaint reveals that the particular CUTPA claim alleged here reasonably can be construed to be outside the scope of the product liability act, the CUTPA claim is not barred and may be asserted in conjunction with the product liability act claim.

In order to answer the certified question, we must analyze the language of the exclusivity provision. We recently articulated our process of statutory interpretation in *State* v. *Courchesne*, 262 Conn. 537, 816 A.2d 562 (2003). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history

and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. Thus, we do not follow the plain meaning rule.

"In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered. In doing so, we attempt to determine its range of plausible meanings and, if possible, narrow that range to those that appear most plausible. We do not, however, end with the language. We recognize, further, that the purpose or purposes of the legislation, and the context of the language, broadly understood, are directly relevant to the meaning of the language of the statute.

"This does not mean, however, that we will not, in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that, when the language is considered without reference to any extratextual sources of its meaning, appears to be *the* meaning and that appears to preclude any other likely meaning. In such a case, the more strongly the bare text supports such a meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 577–78.

We begin our analysis with the language of the statute itself. The exclusivity provision of the product liability act provides: "A product liability claim[4] . . . may be

---

[4] A " '[p]roduct liability claim' " is defined to include "all claims or actions brought for personal injury, death or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any prod-

asserted and shall be in lieu of all other claims against product sellers,[5] including actions of negligence, strict liability and warranty, for harm[6] caused by a product." General Statutes § 52-572n (a).

The exclusivity provision makes the product liability act the exclusive means by which a party may secure a remedy for an injury caused by a defective product. The legislature stated that a product liability claim, as defined by the product liability act, "shall be in lieu of *all other claims against product sellers . . . for harm caused by a product.*" (Emphasis added.) General Statutes § 52-572n (a). We have previously reached this conclusion when interpreting the exclusivity provision. See *Winslow* v. *Lewis-Shepard, Inc.*, 212 Conn. 462, 471, 562 A.2d 517 (1989) ("[t]he legislature clearly intended to make our products liability act an *exclusive remedy* for claims falling within its scope" [emphasis added]); cf. *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 571, 512 A.2d 893 (1986) ("the products liability statute provides an exclusive remedy and . . . plaintiffs cannot bring a common law cause of action for a claim within the scope of the statute"). The issue presented by the certified question, therefore, is whether the plaintiff's CUTPA claim falls within the scope of the product liability act. If it does, then it is

uct. 'Product liability claim' shall include, but is not limited to, all actions based on the following theories: Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent." General Statutes § 52-572m (b).

[5] " 'Product seller' " is defined to mean, in part, "any person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption. . . ." General Statutes § 52-572m (a).

[6] " 'Harm' " is defined to include "damage to property, including the product itself, and personal injuries including wrongful death. As between commercial parties, 'harm' does not include commercial loss." General Statutes § 52-572m (d).

precluded and may not be asserted in conjunction with the product liability act claim. If, however, the CUTPA claim falls outside the purview of the product liability act, it may be asserted and the exclusivity provision will not serve as a bar.

As noted previously, the legislature defined a product liability claim to include all claims or actions brought for personal injury, death or property damage caused by the allegedly defective product. General Statutes § 52-572m (b). The legislature also provided that the damages are caused by the defective product if they arise from the "manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging or labeling of any product." General Statutes § 52-572m (b). In addition, a product liability claim is defined broadly to include, but not be limited to, all actions based on "[s]trict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent; misrepresentation or nondisclosure, whether negligent or innocent." General Statutes § 52-572m (b). Finally, the legislature defined " '[h]arm' " for purposes of the act to include "damage to property, including the product itself, and personal injuries including wrongful death." General Statutes § 52-572m (d).[7] These definitions must be read together, with the understanding that the product liability act was designed in part to codify the common law of product liability,[8] and in part

---

[7] The legislature also stated that "[a]s between commercial parties, 'harm' does not include commercial loss." General Statutes § 52-572m (d). That type of loss is specifically excluded from the product liability act pursuant to General Statutes § 52-572n (c).

[8] See *Lynn* v. *Haybuster Mfg., Inc.*, 226 Conn. 282, 292, 627 A.2d 1288 (1993) ("[T]he legislative history of the [product liability act reveals] . . . that the legislature was merely recasting an existing cause of action and was not creating a wholly new right for claimants harmed by a product. The intent of the legislature was to eliminate the complex pleading provided at common law: breach of warranty, strict liability and negligence.").

to resolve, by legislative compromise, certain issues among the groups interested in the area of product liability.[9] The product liability act, however, was not designed to eliminate claims that previously were understood to be outside the traditional scope of a claim for liability based on a defective product. Given this contextual framework, we conclude that a product liability claim under the act is one that seeks to recover damages for personal injuries, including wrongful death, or for property damages, including damage to the product itself, caused by the defective product.

Therefore, the language of the exclusivity provision makes clear that the product liability act was intended to serve as the exclusive remedy for a party who seeks recompense for those injuries caused by a product defect. The language of the exclusivity provision, however, suggests that it was not designed to serve as a bar to additional claims, including one brought under CUTPA, either for an injury not caused by the defective product, or if the party is not pursuing a claim for "personal injury, death or property damage . . . ." General Statutes § 52-572m (b).

The statute's legislative history, to which both parties refer, supports this interpretation. With regard to the exclusivity provision, Senator Salvatore C. DePiano, one of the product liability act's main proponents, stated: "[The exclusivity provision] sets forth that the Bill is intended as a substitute for prior theories for harm caused by a product. This section is intended to cut down on the number of counts in a complaint for injuries caused by a product. *It is not intended to affect*

---

[9] See 22 H.R. Proc., Pt. 20, 1979 Sess., pp. 7018–19, remarks of Representative Richard D. Tulisano ("[the bill that became the product liability act] is . . . a cooperative effort between both sides of the aisle in order to develop a piece of legislation which attempts to meet the needs of all parties in the state of Connecticut, both consumers, manufacturers and the people concerned with insurance costs").

*other state statutory schemes such as anti-trust acts or the state unfair trade practice act."* (Emphasis added.) 22 S. Proc., Pt. 14, 1979 Sess., pp. 4636–37.

Senator DePiano's statement buttresses our conclusion that, although the product liability act serves as the exclusive remedy for claims falling within its scope, other claims, such as one under CUTPA, which fall *outside* the scope of the product liability act, are not barred. We construe Senator DePiano's statement to express the legislative intent that other statutory remedies are not to be viewed as, per se, falling within the exclusivity provision's bar, solely because they rest in part on the sale of a product. If, however, a party brings a CUTPA claim and seeks to use that statutory scheme when the claim is, in reality, one falling within the scope of the product liability act, then the exclusivity provision applies. This is true, as Senator DePiano's statement suggests, not because the legislature enacted the product liability act with a mind to preclude all CUTPA causes of action, but because the purported CUTPA claim would be revealed to be nothing more than a product liability act claim dressed in the robes of CUTPA. Again, we consider the product liability act to be the legislature's expression of a singular means by which product defect claims may be pursued. Other claims, however, outside the scope of the product liability act are not prohibited.

We conclude that the plaintiff's CUTPA claim may be asserted in conjunction with the product liability act claim. We reach this conclusion based on the following analysis of the plaintiff's second amended complaint. In part, at least, the plaintiff's CUTPA claim does not seek a remedy for personal injury, death or property damage. See General Statutes § 52-572m (b). The plaintiff seeks, rather, to use CUTPA so as to redress merely a *financial injury* suffered by the decedent, of a kind that has never been regarded as part of the traditional

tort remedy for harm caused by a defective product. The plaintiff alleged that the decedent was forced to pay a higher price for the defendants' cigarettes than she would have had to pay in the absence of the wrongful course of conduct allegedly engaged in by the defendants.[10] The financial injury allegedly suffered by the decedent and for which the plaintiff seeks to use CUTPA

---

[10] The plaintiff's second amended complaint contains the following allegations in the third count:

"51. [Reynolds'] deliberate misrepresentations about the health hazards of tobacco products use, including its false assertions that there is a bona fide scientific controversy about whether tobacco use [causes] disease, was further intended to affect the decisions of consumers to buy tobacco products and thereby to affect the price of those products. As a result of defendants' deliberate misrepresentations as aforesaid, [Reynolds] unfairly and deceptively maintained the price of its tobacco products, including its Winston and Salem cigarettes, at an inflated level not otherwise obtainable and caused [the decedent] and the consuming public generally to pay more for the cigarettes that they purchased than was warranted or than they would otherwise have paid in the absence of these misrepresentations.

"52. [Reynolds'] deliberate misrepresentations about the addictive nature of nicotine and about its deliberate undertakings to control and manipulate the level of nicotine in its tobacco products, including its Winston and Salem cigarettes, was further intended to affect the decisions of consumers to buy tobacco products and thereby to affect the price of those products. As a result of defendants' deliberate misrepresentations as aforesaid, [Reynolds] unfairly and deceptively maintained the price of its tobacco products, including its Winston and Salem cigarettes, at an inflated level not otherwise obtainable and caused [the decedent] and the consuming public generally to pay more for the cigarettes that they purchased than was warranted or than they would otherwise have paid in the absence of these misrepresentations.

\* \* \*

"58. [The decedent] was further injured as a result of [Reynolds'] wrongful scheme in that she was caused to pay more for the cigarettes she purchased than was warranted by virtue of [Reynolds'] illegal youth targeting, misrepresentations about the health hazards and addictive nature of its cigarettes, manipulation of the nicotine in its cigarettes and other conduct set forth in this Complaint.

\* \* \*

"66. As a consequence of [Reynolds'] wrongful conduct as aforesaid, [the decedent] suffered *financial loss*." (Emphasis added.)

The same allegations are made against Lorillard in the fourth count of the plaintiff's second amended complaint.

to provide a remedy, cannot reasonably be construed to be a claim for "personal injury, death or property damage . . . ." General Statutes § 52-572m (b). For this reason, the plaintiff's CUTPA claim may be brought in conjunction with a claim under the product liability act.[11]

The defendants also contend that the plaintiff is precluded, under CUTPA, from seeking restitution and disgorgement of profits on behalf of the public. We decline to address this argument.[12] The scope of our review in a case involving a certified question from a federal court is ordinarily limited to the issue raised by that question. See *Ramos* v. *Vernon*, 254 Conn. 799, 818, 761 A.2d 705 (2000). The narrow issue presented through the certified question is whether the exclusivity provision of the product liability act precludes the plaintiff from using CUTPA to assert a claim for damages resulting from the defendants' alleged scheme to conceal and misrepresent a product defect. We have addressed that issue through this opinion. Even if we were to assume that the defendants are correct that the plaintiff is precluded from obtaining damages on behalf of the public, that does not change our analysis or the result of the question certified to us by the District Court. We reached our conclusion that the plaintiff is not precluded from asserting his claim under CUTPA because

[11] The defendants contend that this financial injury is "damage to property," and, therefore, constitutes " '[h]arm' " within the meaning of § 52-572m (d), thus making the claim one that is within the scope of the product liability act. We disagree that this financial loss constitutes harm for the purposes of the product liability act because a product liability claim can only be a claim seeking recompense for personal injury, death or property damage. General Statutes § 52-572m (b). The financial injury allegedly suffered by the decedent is none of these.

[12] We granted in part and denied in part, the plaintiff's motion to strike improper matter from the defendants' brief. We struck as improper that portion of the defendants' brief in which the defendants argued that the plaintiff's attempt to seek restitution and disgorgement on behalf of the public is barred by res judicata.

that claim is not one for personal injuries, death or property damage. The types of damages permitted under CUTPA and to whom they are available, is beyond the scope of this certified question.

The answer to the certified question is: No.

No costs shall be taxed in this court to either party.

In this opinion BORDEN and VERTEFEUILLE, Js., concurred.

ZARELLA, J., with whom SULLIVAN, C. J., joins, concurring. I agree with the majority's conclusion in this case but write separately to reaffirm my continuing belief in the plain meaning rule as expressed in my dissenting opinion in *State* v. *Courchesne*, 262 Conn. 537, 597, 618–19, 816 A.2d 562 (2003) (*Zarella, J.*, dissenting). Accordingly, I see no need for the majority to look farther than the text of the Connecticut Product Liability Act (act), General Statutes § 52-572m et seq., to reach its conclusion that the exclusivity provision of the act applies only to actions seeking damages for personal injuries, including wrongful death, or property damage caused by the defective product.