## CATHERINE SMITH *v.* DYNAMIC COOKING SYSTEMS, INC., ET AL.

Superior Court, Complex Litigation Docket at Waterbury
File No. X01-CV-04-0183366 S

Memorandum filed July 27, 2005

*Howd & Ludorf*, for the third party plaintiff Dynamic Cooking Systems, Inc., et al.

*Esty and Buckmir, LLC*, for the third party defendant Alywin Bracey.

SHEEDY, J. By summons and complaint returnable to the Waterbury judicial district on March 23, 2004, the plaintiff, Catherine Smith, brought a three count complaint, each count asserted under the Product Liability Act (act), General Statutes § 52-572m et seq., against the defendants, Dynamic Cooking Systems, Inc. (Dynamic), Powerhouse Appliances and Television, Inc. (Powerhouse), and SBE Company, Inc. Paragraph three of count one of that complaint alleges that flames shot out of the range she was using and struck her in

the face. It further alleges that Dynamic manufactured the range, Powerhouse sold it to her and SBE Company, Inc., installed it in her home. Thereafter, Dynamic and Powerhouse filed a third party complaint against Alywin Bracey, doing business as A & B Appliance Repair (Bracey). They alleged that Smith had hired Bracey to repair the subject range prior to the alleged incident (paragraph five) and sought common-law indemnification against Bracey on the basis of his alleged negligent repair. Subsequently, the original plaintiff filed an amended complaint asserting a direct claim of negligence against Bracey in count four therein.[1] A potpourri of ten assertions of negligence by Bracey are asserted in paragraph five of the third party complaint,[2] and Smith, in her amended complaint, picks up the same ten allegations in paragraph six of count four.

As the third party defendant, Bracey has moved to strike the third party complaint and alleges that the common-law indemnification claim is legally insufficient as between codefendants, does not lie as between commercial parties and fails to allege the facts necessary to plead a claim for common-law indemnification. The third party plaintiffs have objected on all grounds. The parties have filed memoranda of law. Although scheduling order number one specifically authorized the filing of a reply memorandum as applicable to dispositive motions (the case was transferred to the complex litigation docket on January 27, 2005), the third party defendant has declined to do so. The parties have waived oral argument and have consented to the court's adjudication of the motion on the papers.

---

[1] In that amended complaint, Smith also sued (for the first time) Raps Plumbing and Heating, Inc., asserting a claim under the act in count five and a cause of action in negligence in count six.

[2] In general, the claim is that Bracey failed to service, maintain, repair, install or inspect the range properly.

## I

## APPLICABLE LAW

"A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 498, 815 A.2d 1188 (2003). It tests whether the complaint states a claim on which relief can be granted. *Vacco* v. *Microsoft Corp.*, 260 Conn. 59, 65, 793 A.2d 1048 (2002); Practice Book § 10-39. The trial court's role is to examine the complaint and construe it in favor of the pleader. *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 260 Conn. 766, 772, 802 A.2d 44 (2002). Specifically, the court must "assume the truth of both the specific factual allegations and any facts fairly provable thereunder" and "read the allegations broadly, rather than narrowly." *Craig* v. *Driscoll*, 262 Conn. 312, 321, 813 A.2d 1003 (2003). The requirement of favorable construction does not extend, however, to legal opinions or conclusions stated in the complaint, but only to factual allegations and the facts "necessarily implied and fairly provable under the allegations." (Internal quotation marks omitted.) *Forbes* v. *Ballaro*, 31 Conn. App. 235, 239, 624 A.2d 389 (1993). The motion is to be tested by the allegations of the pleading, which allegations cannot be enlarged by the assumption of any facts not therein alleged. *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.*, 179 Conn. 541, 549–50, 427 A.2d 822 (1980). The motion is properly granted if the complaint alleges mere conclusions of law unsupported by the facts alleged. *Fidelity Bank* v. *Krenisky*, 72 Conn. App. 700, 720, 807 A.2d 968, cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002); *Donar* v. *King Associates, Inc.*, 67 Conn. App. 346, 349, 786 A.2d 1256 (2001). "If any facts provable under the express and implied allegations in the plaintiff's complaint support a cause of action . . . the

complaint is not vulnerable to a motion to strike." *Bouchard* v. *People's Bank*, 219 Conn. 465, 471, 594 A.2d 1 (1991).

## II

## COMMON-LAW INDEMNIFICATION CLAIMS AS BETWEEN CODEFENDANTS

Bracey claims that *Kyrtatas* v. *Stop & Shop, Inc.*, 205 Conn. 694, 535 A.2d 357 (1988), bars this common-law indemnification claim as inconsistent with the comparative responsibility provisions of the act—specifically, General Statutes § 52-572o (b), (c) and (d)—and with § 52-572o (e) allowing an action for contribution. See *Kyrtatas* v. *Stop & Shop, Inc.*, supra, 699–701. Bracey cites to that court's holding that "the product liability act has abrogated common law indemnification principles in this area." Id., 702. Relevant to that determination, the court, in footnote 2 of its opinion, continued: "Our holding applies to situations in which all potential defendants are parties to the suit. In such a situation, a jury's findings concerning the relative responsibility of the parties are conclusive, and are entitled to res judicata status. On some occasions, a plaintiff may not sue all potential defendants. A defendant may implead a third party who may be liable for all or part of the plaintiff's claim against him. Practice Book § 117 [now § 10-11]. In this case we need not consider the effect of a jury's findings concerning comparative responsibility in a subsequent indemnification suit against a joint tortfeasor who had not been made a party in the suit in which the verdict and findings of the jury were rendered." *Kyrtatas* v. *Stop & Shop, Inc.*, supra, 702 n.2.

Also relevant is that the *Kyrtatas* plaintiff sued Stop & Shop, Inc., Shield Packaging Company, Inc., and Crown, Cork & Seal Company, Inc. Cross complaints were filed by Stop & Shop, Inc., and Crown, Cork & Seal Company,

Inc., as against each other and as against Shield Packaging Company, Inc. Shield Packaging Company, Inc., filed a cross complaint seeking indemnity from Crown, Cork & Seal Company, Inc. The jury found Stop & Shop, Inc., and Shield Packaging Company, Inc., legally liable to the plaintiff and found that Shield Packaging Company, Inc., was liable to indemnify Stop & Shop, Inc. Our Supreme Court set aside the judgment in favor of Stop & Shop, Inc., on its cross complaint for indemnification by Shield Packaging Company, Inc., and remanded the case to the trial court with direction to render judgment in accordance with the jury's findings of comparative responsibility.[3] Id., 703.

Dynamic and Powerhouse claim this case is controlled by *Malerba* v. *Cessna Aircraft Co.*, 210 Conn. 189, 554 A.2d 287 (1989). There, the plaintiff sued the defendant airplane manufacturer in negligence, breach of warranty and product liability. Id., 190. The defendant then was granted permission to file a third party complaint against the aircraft's owner and mechanic (one count for common-law indemnification and one count for contribution as against each). Id., 190–91. The plaintiff's motion to strike the third party complaint (because "it seeks contribution [in a way] . . . not recognized under Connecticut law"; [internal quotation marks omitted]; id., 191;) was granted by the trial court—in part because common-law principles of indemnification had been abrogated by the act. Our Supreme Court reversed the judgment. Id., 199. It did so by harmonizing § 52-572o (e)—which established preconditions to the initiation of a contribution action—with both General

---

[3] Applying the comparative responsibility provisions of § 52-572o (b), (c) and (d), the jury found Stop & Shop, Inc., and Shield Packaging Company, Inc., each to be 49 percent responsible and the plaintiff to be 2 percent responsible. Crown, Cork & Seal Company, Inc., was not found responsible to the plaintiff. *Kyrtatas* v. *Stop & Shop, Inc.*, supra, 205 Conn. 697.

Statutes § 52-102a (a)—which authorized the impleading of third parties by a defendant in civil actions "without such preconditions"; *Malerba* v. *Cessna Aircraft Co.*, supra, 194;—and General Statutes § 52-577a (b), the statute of limitations under the act. *Malerba* v. *Cessna Aircraft Co.*, supra, 194. The court reasoned that the preconditions of § 52-572o (e) applied only to situations in which "a party elects to pursue an independent cause of action for a contribution rather than impleading the prospectively liable third party as authorized by §§ 52-102a and 52-577a (b)." Id., 195. "[W]hile § 52-572o (e) requires some disposition of the original claim as a precondition to the *initiation* of a cause of action seeking contribution from a third party, §§ 52-102a and 52-577a (b) implicitly authorize the *inclusion* of such a claim in the original product liability action without any preconditions." (Emphasis in original.) Id. The court then addressed the question here to be decided— "whether as a matter of law, an indemnification action may ever be pursued against the background of a statutory comparative liability action where the trier of the first party claim against the various defendants is required to apportion liability among the plaintiff and all the defendants." Id., 196. The court concluded that it did *not* because the indemnity claim is not finally determined by the first party judgment (which establishes only the defendants' liability to the plaintiff) and because indemnification implicates different factual and legal considerations, which may be outside of the matters determined in the original plaintiff's claim under the act—specifically, such issues as active-passive negligence. Id., 198. "Thus, a finding that a given defendant was liable to the plaintiff does not necessarily determine whether that responsibility was based on a passive negligence which might, therefore, entitle that defendant to a full reimbursement from other defendants based upon indemnification principles." Id. The

court cryptically noted in a footnote that its holding in *Kyrtatas* "was specifically limited to its factual circumstances which are different from the procedural posture in which we find this case." Id., 198 n.9. No further guidance is provided.

The third party plaintiffs thus urge the application of *Malerba* because there—as here—the indemnification claims were brought as third party complaints and are in that way "procedurally" similar. That ignores, however, that in the case before this court, Smith, by virtue of having filed an amended complaint, has directly sued not only Dynamic and Powerhouse, but also Bracey. As in *Kyrtatas*, all parties are before the court as direct parties in this product liability case. Thus, the words of the *Kyrtatas* court appear applicable: "It is significant that the legislature in the product liability act provides for contribution, but does not mention the possibility of indemnification. General Statutes § 52-572o (e). If the General Assembly had intended to retain common law indemnification principles in the context of product liability suits, it could have explicitly so stated, as it did in our comparative negligence statute. Courts may not read into clearly expressed legislation provisions which do not find expression in its words." (Internal quotation marks omitted.) *Kyrtatas* v. *Stop & Shop, Inc.*, supra, 205 Conn. 702.

The *Malerba* court's conclusion that its construing § 52-572o (e) as applicable only to situations in which a party elects to bring an independent cause of action for contribution "furthers the salutary purpose of encouraging parties to consolidate the litigation flowing from a given factual circumstance into a single judicial proceeding thereby avoiding multiplicity of actions"; *Malerba* v. *Cessna Aircraft Co.*, supra, 210 Conn. 195; is frustrated if *Kyrtatas* governs because the third party plaintiffs' only remaining remedy would be to bring a later action for contribution.

How then to resolve this morass? In *State* v. *Courchesne*, 262 Conn. 537, 816 A.2d 562 (2003), our Supreme Court gave a fresh look at our decisional law's dichotomy regarding statutory construction and, specifically, whether resort to extratextual sources is appropriate when the statutory language appears plain and unambiguous. It made explicit that its approach to the process of statutory construction was to be governed by the formulation enunciated in *Bender* v. *Bender*, 258 Conn. 733, 785 A.2d 197 (2001), a formulation that involves "a reasoned search for the intention of the legislature"; (internal quotation marks omitted) *State* v. *Courchesne*, supra, 562 n.20; which requires one to "look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) Id. The court went on to state that although the process of interpretation does not end by looking at the textual language, it is the most important factor to be considered in the search for the meaning of the language employed; id., 563–64; and that the context of the legislative language includes "the other language used in the statute or statutory scheme at issue, the language used in other relevant statutes, the general subject matter of the legislation at issue, the history or genealogy of the statute, as well as the other, extratextual sources identified by the *Bender* formulation." Id., 566.[4] Application of that approach requires, in this court's view, the conclusion of the *Kyrtatas* court that a claim for common-law indemnification does not here lie.

---

[4] The same test was adopted one year later by the Appellate Court in *Falkenstein* v. *Falkenstein*, 84 Conn. App. 495, 501, 854 A.2d 749, cert. denied, 271 Conn. 928, 859 A.2d 581 (2004).

The legislature, in § 52-572o, clearly abolished the common-law prohibition against contribution in a product liability action. It could have permitted—but did not—an action for indemnification. The history of the act is silent concerning whether the legislature considered the impact of the statute on the common-law right of indemnification. *Kyrtatas* v. *Stop & Shop, Inc.*, supra, 205 Conn. 698–99 n.1. In determining the intention expressed by the words our legislature used, the court in *Kyrtatas* determined the intent of the statutory language was to abrogate common-law indemnification claims as inconsistent with the act's provisions concerning comparative responsibility, the award of damages, and contribution under § 52-572o (b), (c), (d) and (e). Clearly, the legislature knew how to preserve indemnification actions if it had so intended.[5] Construing § 52-572o (e) in this way is consistent with § 52-572n (a), which provides in relevant part that a product liability claim "shall be in lieu of all other claims against product sellers, including actions of negligence, strict liability and warranty, for harm caused by a product,"[6] in that the latter expresses a legislative intent to simplify pleading rules and to relieve plaintiffs of the need, for example, to prove negligence in order to recover. Additionally, this court is hesitant to embrace the *Malerba* court's willingness to reconcile § 52-572o (e) with other statutes not part of the act's scheme (i.e., §§ 52-102a and 52-577a [b]) because that is at odds with the *Kyrtatas* court's rejection of an argument there that urged reconciling § 52-572o (e) with General Statutes § 52-572h (k),

---

[5] See, e.g., General Statutes § 52-572h (j), a provision of our comparative negligence statute, which provides in relevant part: "This section shall not impair any right to indemnity under existing law. . . ."

[6] A claim under the act can, however, coexist with a claim under the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., for damages alleged to have been caused by a product seller's deceptive scheme to misrepresent and to conceal the product defect. See *Gerrity* v. *R.J. Reynolds Tobacco Co.*, 263 Conn. 120, 818 A.2d 769 (2003).

now (j), a provision of our comparative negligence statutes. *Kyrtatas* v. *Stop & Shop*, supra, 702.

The third party complaint does not state a legally cognizable claim, and the third party defendant's motion to strike is granted.

Although the preceding discussion is dispositive of the motion, the court notes the following:

(1) This court does not conclude that an adverse judgment is a loss within the scope of "harm" compensable under the product liability statute. Under § 52-572m (b), a product liability claim includes all claims or actions "brought for personal injury, death or property damage . . . ." General Statutes § 52-572m (b). Section 52-572m (d) defines "harm" as "damage to property" and "personal injuries including wrongful death. . . ." Addressing the kind of pure financial injury resulting from an adverse judgment, our Supreme Court, in *Gerrity* v. *R.J. Reynolds Tobacco Co.*, 263 Conn. 120, 129–30, 818 A.2d 769 (2003), described such injury as "merely a financial injury . . . of a kind that has never been regarded as part of the traditional tort remedy for harm caused by a defective product." That financial injury cannot reasonably be construed to be a claim for "personal injury, death or property damage . . . ." (Internal quotation marks omitted.) Id., 131, quoting § 52-572m (b).

(2) The third party plaintiffs, to recover as indemnitees, have to prove that (a) Bracey was negligent, (b) Bracey's negligence was active negligence rather than the moving parties' passive negligence, (c) Bracey's active negligence was the direct, immediate cause of the resulting injuries or losses, (d) Bracey was in control of the situation to the exclusion of the moving parties, and (e) the third party plaintiffs did not know of Bracey's negligence, had no reason to anticipate it and reasonably could rely on Bracey not to be negligent.

See *Kaplan* v. *Merberg Wrecking Corp.*, 152 Conn. 405, 416, 207 A.2d 732 (1965). Bracey notes the failure of the third party complaint to allege that he had exclusive control of the situation causing the plaintiff's injuries. The third party plaintiffs' argument that the allegation that Bracey was hired to repair the subject range sufficiently asserts exclusive control misses the mark. Absent an allegation that Bracey was in control to the exclusion of Dynamic and Powerhouse, the pleading is insufficient. Further, to posit that that requirement is satisfied because the court must broadly construe the facts most favorable to the plaintiff in adjudicating a motion to strike ignores that exclusive control is not a "fact" alleged and, thus, that kind of bootstrap argument fails. Finally, with regard to the requirement that there be "exclusive control over the situation," our Supreme Court has expansively defined that phrase in *Skuzinski* v. *Bouchard Fuels, Inc.*, 240 Conn. 694, 694 A.2d 788 (1997). "It is plausible to define exclusive control over 'the situation' as exclusive control over the dangerous condition that gives rise to the accident." Id., 706. Thus, the "situation" here is *not* the "repair" to the range, but the defect that is alleged to have caused it to shoot out flames. Accord *Gianquitti* v. *Sheppard*, 53 Conn. App. 72, 728 A.2d 1133 (1999).

(3) The third party plaintiffs do, however, correctly state there is not the need to plead an independent legal relationship between the indemnitee and indemnitor. *Atkinson* v. *Berloni*, 23 Conn. App. 325, 580 A.2d 84 (1990), does not impose such a heightened requirement. Although the Appellate Court in *Atkinson* does note that most Connecticut indemnification cases involve an independent legal relationship between the indemnitor-indemnitee; id., 327; whether such a relationship here exists so as to give rise to a duty to indemnify cannot be discerned from the facts pleaded in the third party complaint.