**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

TOLL BROS., INC.,
            *Plaintiff-Appellant,*

v.

DRYVIT SYSTEMS, INCORPORATED;
IMPERIAL STUCCO, INCORPORATED;
GILL LEVESQUE, d/b/a Imperial
Stucco, LLC,
            *Defendants-Appellees.*

No. 05-1077

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-03-175-BR)

Argued: October 26, 2005

Decided: December 21, 2005

Before WILKINS, Chief Judge, and NIEMEYER and
KING, Circuit Judges.

---

Affirmed in part, reversed in part, and remanded by published opinion. Chief Judge Wilkins wrote the majority opinion, in which Judge King joined. Judge Niemeyer wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Dexter Ryan Hamilton, COZEN O'CONNOR, Philadelphia, Pennsylvania, for Appellant. Jon Peter Antkowiak, Rocky Hill,

Connecticut; Andrew P. Fishkin, EDWARDS & ANGELL, L.L.P., Short Hills, New Jersey, for Appellees. **ON BRIEF:** Kenneth J. Cesta, EDWARDS & ANGELL, L.L.P., Short Hills, New Jersey, for Appellee Dryvit Systems, Inc.

---

### OPINION

WILKINS, Chief Judge:

Toll Bros., Inc. (Toll) appeals a district court order granting summary judgment against it in this action against Dryvit Systems, Inc., Imperial Stucco, Inc., and Gill Levesque, d/b/a Imperial Stucco, LLC,[1] seeking primarily to recover the costs it incurred in removing allegedly defectively designed synthetic stucco from homes that it had built and then recladding the homes with a different finish. We affirm in part, reverse in part, and remand for further proceedings.

I.

Toll is a real estate developer and builder. In or around 1996, Toll began development of a residential community called "Newtown Chase" in Newtown, Connecticut. Toll contracted with Imperial to clad some of the homes in the development with "Outsulation," a synthetic stucco exterior insulation finish system (EIFS) that Dryvit manufactured.

In October 1999, several Newtown Chase homeowners whose homes were clad with Dryvit's EIFS ("the homeowners") wrote to Toll expressing concerns regarding the EIFS and alleging that Toll's advertising and promotional literature did not reveal that the homes would be clad in synthetic, rather than actual, stucco. The letter requested information regarding Toll's written warranty policies relating to the EIFS as well as the EIFS product warranty. The homeowners also asked for a letter of compliance from the contractor that installed the system verifying that installation was completed in accordance with the manufacturer's specifications.

---

[1] We refer collectively to the latter two parties as "Imperial" and to all three parties as "Appellees."

In August 2000, the homeowners again contacted Toll, this time demanding, *inter alia*, that Toll remove Dryvit's EIFS from their homes and reclad them with another finish. By this time, it was not just the homeowners who had questions regarding Dryvit's EIFS; Toll had also come to believe that the EIFS was defectively designed in that it "permitted water and moisture to penetrate the exterior of the houses" without "provid[ing] a means for the water to evaporate or drain," thereby causing significant problems including "rotting, structural damage, health hazards and diminished property value." J.A. 262. Although Toll had not yet received any complaints of actual water infiltration from Newtown Chase homeowners, it nevertheless agreed to remove the EIFS and reclad the homes with a different product. In return, the homeowners released Toll from liability for future harm caused by the EIFS and assigned Toll their rights to sue the responsible parties.

Toll subsequently initiated this action in Connecticut state court, primarily seeking compensation for the costs it incurred in stripping and recladding the homes. Against both Dryvit and Imperial, Toll asserted claims for unjust enrichment, unfair trade practices (in misrepresenting the capabilities of the EIFS), *see* Conn. Gen. Stat. Ann. §§ 42-110a–42-110q (West 2005), negligent and intentional misrepresentation, and claims under the Connecticut Product Liability Act (CPLA), *see* Conn. Gen. Stat. Ann. §§ 52-572m–52-572q (West 2005). Toll's complaint also alleged an indemnification claim against Imperial based on a contractual indemnity clause.

After Appellees removed this suit to federal district court,[2] the district court granted summary judgment against Toll. The court expressed doubt regarding whether Toll had forecasted sufficient evidence that the EIFS was in fact defectively designed. That issue aside, however, the court ruled as a matter of law that no such defect had caused any harm to the homes and that the proximate cause of Toll's dispute and settlement with the homeowners was Toll's misrepresentation to them that the homes would be clad in actual, rather than synthetic, stucco. Ruling as a matter of law that Dryvit could not have

---

[2]The suit was removed to the District of Connecticut but was later transferred to the Eastern District of North Carolina pursuant to the multidistrict litigation statute. *See* 28 U.S.C.A. § 1407 (West 1993).

reasonably foreseen that Toll would make such a misrepresentation, the district court determined that Toll had failed to forecast evidence creating a genuine issue of fact about whether its injuries were proximately caused by the defectiveness of the EIFS (or Appellees' misrepresentations concerning that defectiveness).

The district court further ruled as a matter of law that Toll's contract with Imperial did not entitle Toll to indemnification. The court noted that the indemnity clause in the parties' agreement states that Imperial is only obligated to indemnify Toll "from and against all claims, damages, losses and expenses . . . arising out of or resulting from the performance of [Imperial's] Work." J.A. 668. The court reasoned that, as a matter of law, the homeowners' claims arose out of Toll's misrepresentations, not Imperial's work.

## II.

We review the grant of summary judgment de novo, viewing the disputed facts in the light most favorable to Toll. *See Edelman v. Lynchburg College*, 300 F.3d 400, 404 (4th Cir. 2002). Summary judgment is warranted when the admissible evidence forecasted by the parties "demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

## A.

Toll does not dispute that to recover under any of its claims, it must establish that the financial losses it incurred as a result of its dispute with the homeowners were proximately caused by the defectiveness of Dryvit's EIFS.[3] Toll argues, however, that the district court erred

---

[3]The district court, in expressing doubt that Toll created a genuine issue of material fact concerning the defectiveness of the Outsulation cladding installed on the Newtown Chase homes, did not address what appears to be the centerpiece of Toll's case on this issue—the report of its expert, Mark Williams. Williams opines that Dryvit's EIFS suffers from "conceptual design deficiencies" because it "assumes that all water will be shed at the exterior face of the cladding," when in fact the system causes "entrapment of incidental water." J.A. 295. And, he further states

in ruling that there was no genuine issue of material fact regarding whether the defective design of Dryvit's EIFS proximately caused Toll's alleged injuries. In so doing, Toll challenges the ruling of the district court that the record established as a matter of law that its injuries were proximately caused by its misrepresentation to the homeowners that the homes were to be clad in actual, rather than synthetic, stucco. We agree with Toll.

Under Connecticut law,[4] proximate cause is "an actual cause that is a substantial factor in the resulting harm." *Stewart v. Federated Dep't Stores, Inc.*, 662 A.2d 753, 758 (Conn. 1995) (internal quotation marks, alteration & emphasis omitted). Whether a plaintiff's injuries were proximately caused by the defendant generally presents a factual question for the jury to determine. *See id.* at 760. The question becomes one of law "only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact." *Trzcinski v. Richey*, 460 A.2d 1269, 1275 (Conn. 1983) (internal quotation marks omitted).

Here, the forecasted evidence does not establish as a matter of law that Toll misled the homeowners regarding whether the homes were to be clad with synthetic stucco. Although Dryvit forecasted evidence of the homeowners' out-of-court complaints that Toll misled them,

---

that such entrapment has "frequently caused consequential damage to underlying water sensitive wall components such as sheathing and framing." *Id.* at 291. This report alone was sufficient to create a genuine issue of material fact regarding whether Dryvit's EIFS was defectively designed. Appellees do not appear to challenge this conclusion, choosing instead to argue that Toll failed to forecast sufficient evidence concerning actionable injury and proximate cause. *See* Br. of Appellees at 13.

[4]Because this is a multidistrict litigation case, Connecticut law governs the substantive law issues. *See Temporomandibular Joint (TMJ) Implant Recipients v. E.I. DuPont de Nemours & Co. (In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.)*, 97 F.3d 1050, 1055 (8th Cir. 1996) ("When considering questions of state law, . . . the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.").

the evidence that such complaints were made is not admissible to prove that they were true. *See* Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); Fed. R. Evid. 802 ("Hearsay is not admissible except as provided by [the Federal Rules of Evidence] or by other rules pre-scribed by the Supreme Court pursuant to statutory authority or by Act of Congress.").

Moreover, even if the record established as a matter of law that Toll misled the homeowners regarding whether it used actual stucco on their homes, there is a genuine issue of material fact regarding whether the misrepresentations proximately caused Toll's dispute and settlement with the homeowners. Homeowner Craig Tenenbaum testi-fied by deposition that the homeowners' complaint that Toll repre-sented to them that the homes were to be clad with actual stucco was only "one of the reasons" that the homeowners demanded that Dry-vit's system be replaced. J.A. 193. The possibility that the system installed simply was not sufficient to protect the homes from water damage was also a primary concern. *See id.* at 194 (Tenenbaum's deposition testimony that the homeowners wanted their homes reclad because they thought Dryvit's system might cause water damage). Indeed, in their initial letter to Toll, the homeowners requested Toll's written warranty policies regarding the system. Thus, the record did not establish as a matter of law that the homeowners would not have made the same demands absent any misrepresentation by Toll.

Similarly, the record does not establish as a matter of law that any misrepresentation by Toll was a substantial factor in Toll's decision to submit to the homeowners' demands. Toll forecasted evidence that it was the likelihood of future water damage to the homes from the defective EIFS that it was concerned about when it decided to settle with the homeowners. Specifically, Greg Kamedulski, a Toll vice president, stated in an affidavit that (1) at the time Toll decided to use Dryvit EIFS, it believed that the EIFS "was suitable for use on resi-dential homes"; (2) it reclad the homes because it discovered that the EIFS "was inherently defective"; and (3) the recladding "was undertaken in an effort to prevent further damage to the[ ] homes." *Id.* at 262-63. For all of these reasons, the district court erred in ruling as a matter of law that misrepresentations by Toll, rather than the

defectiveness of Dryvit's EIFS, were the proximate cause of Toll's injuries.[5]

## B.

Appellees contend that any injuries suffered by Toll were nonetheless not actionable in the absence of forecasted evidence that Dryvit's system damaged the homeowners' homes. We agree with Appellees regarding Toll's CPLA claim. To recover under the CPLA, a plaintiff must prove "personal injury, death or property damage caused by" the product. Conn. Gen. Stat. Ann. § 52-572m(b). Because Toll does not claim that Dryvit's EIFS actually damaged the homes, its CPLA claims fail as a matter of law. *Cf. BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 610-11 (2d Cir. 1996) (holding that CPLA claim did not accrue simply by presence of asbestos but upon discovery of actual harm caused by the dangerous product).

The lack of forecasted evidence of property damage is not a proper ground for affirmance, however, regarding Toll's other claims. Toll has alleged that Appellees' misrepresentations and other tortious actions induced it to use Dryvit's defective cladding. These claims fall outside of the CPLA to the extent that they seek damages for a wholly financial injury, namely, the cost of Toll's dispute and settlement with the homeowners. *See Gerrity v. R.J. Reynolds Tobacco Co.*, 818 A.2d 769, 774-76 (Conn. 2003) (holding that claims alleging only financial injury and no property damage, death, or personal injury fall outside the scope of the CPLA).

---

[5]Dryvit points out that Toll's initial settlement offer to the homeowners was not extended to Tenenbaum since he did not purchase his home from Toll and because he was notified by his seller that his home had been clad with Dryvit's EIFS. Dryvit argues that this fact establishes as a matter of law that Toll's misrepresentations were the basis for the settlement. This amounts to pure speculation, however. It is also possible that the absence of a buyer-seller relationship reduced Toll's incentive to settle with Tenenbaum because it eliminated Toll's concern that it would be liable to Tenenbaum under a warranty theory. *See Coburn v. Lenox Homes, Inc.*, 378 A.2d 599, 602 (Conn. 1977) ("declin[ing] to extend liability under a warranty theory from the builder-vendor to a subsequent purchaser of a house").

Appellees do not deny that Toll faced potential future liability, by warranty or otherwise, for damage caused to the homes by Dryvit's system. Appellees nevertheless maintain that Toll was required to choose between allowing such damage to occur or preventing the damage at its own expense with no right of recourse against Appellees. The law does not require such a Hobson's choice, however. That is so because in Connecticut, as elsewhere, the failure by a plaintiff to make a reasonable attempt to avoid injury from a defendant's tortious action may bar the plaintiff from recovering for his injury. *See Keans v. Bottiarelli*, 645 A.2d 1029, 1031 (Conn. App. Ct. 1994). The corollary to this proposition is that a plaintiff may recover from a tortfeasor the expense of a reasonable attempt to avoid being injured by the tort. *See Fogel v. Zell*, 221 F.3d 955, 960-61 (7th Cir. 2000) (stating that had a city learned that it had installed a defectively manufactured sewer pipe, "it would have been entitled by the doctrine of mitigation of damages to remove the pipe or take other prophylactic or reparative measures, and to seek restitution of the expense of doing so from [the manufacturer], provided the expense was prudent in the circumstances"); *Restatement (Second) of Torts* § 919(1) (1979) ("One whose legally protected interests have been endangered by the tortious conduct of another is entitled to recover for expenditures reasonably made or harm suffered in a reasonable effort to avert the harm threatened."). Here, Toll has created a genuine issue of material fact regarding whether its recladding of the homes was a reasonable attempt to avoid incurring liability resulting from Appellees' tortious misrepresentations and nondisclosures concerning the capabilities of Dryvit's EIFS. Thus, the wholly financial nature of Toll's alleged injury did not doom its entire action.

The dissent rejects our conclusion but misstates the basis for our decision. The dissent claims that we "accept[ ] . . . that damage to the houses actually resulted" from Dryvit's EIFS, *post*, at 12, when clearly we do no such thing, *see supra*, at 7 (noting that "Toll does not claim that Dryvit's EIFS actually damaged the homes"). Appellees argued before the district court and continue to argue before us that the fact that Toll has forecast no evidence that any of the Newtown Chase homes have been damaged by the EIFS entitles them to summary judgment. As we have explained, we reject the notion that the lack of evidence of property damage is fatal to Toll's non-CPLA claims because Toll would be entitled to recover on those claims if

it established that its actions constituted a reasonable attempt to avoid incurring liability proximately caused by Appellees' tortious conduct.

Although the dissent notes that Connecticut law does not allow recovery of damages for a *possible* future injury, *see post*, at 13, it does not dispute that a plaintiff may be reimbursed under Connecticut law for expenses it has *actually* incurred in a reasonable attempt to avoid future liability resulting from a defendant's tortious conduct. The dissent nevertheless states that it would affirm the grant of summary judgment on the ground that Toll has forecasted insufficient evidence concerning the likelihood that damage would have occurred had Toll not intervened. *See id.* at 11. We disagree. Toll forecasted evidence that the Dryvit's EIFS causes "entrapment of incidental water" and that such entrapment has "frequently caused consequential damage to underlying water sensitive wall components such as sheathing and framing." J.A. 291, 295. Although the precise likelihood that the EIFS would cause future damage to the Newtown Chase homes—and the extent of the expected damage—may be relevant on the issue of whether Toll's measures constituted a reasonable attempt to avoid or mitigate its damages from Appellees' alleged tortious conduct, we conclude that Toll's forecasted evidence is at least sufficient to create a genuine issue of material fact concerning reasonableness. *See Williams Ford, Inc. v. Hartford Courant Co.*, 657 A.2d 212, 222 (Conn. 1995) ("We have consistently held that reasonableness is a question of fact for the trier to determine based on all of the circumstances.").

III.

Toll also maintains that the district court erred in concluding as a matter of law that Toll was not entitled to indemnification for its expenditures under its agreement with Imperial. We disagree.

Toll's agreement with Imperial states that Imperial must indemnify Toll "from and against all claims, damages, losses and expenses . . . arising out of or resulting from the performance of [Imperial's] Work." J.A. 668. Imperial agreed to "furnish all labor [and] material" necessary to clad the homes with Dryvit's system and "guaranteed" that all material would "be as specified." *Id.* at 669, 676, 678-80. Toll does not point to any specifications regarding the material that Impe-

rial failed to meet. The problem, if any, was that the material that Imperial had agreed to provide was defectively designed. Stated another way, assuming that Dryvit's system was defective, as Toll alleges it was, it was Toll's decision to clad the homes with that defective product, not Imperial's supplying or installation of the system, that caused Toll to incur the costs associated with its dispute with the homeowners. Indeed, Toll has failed to forecast evidence that it could have avoided these costs by subcontracting with a different company.[6]

IV.

Appellees maintain that to the extent that summary judgment should otherwise be reversed, it should be affirmed on the basis of spoliation of the evidence. Specifically, Appellees complain of Toll's removing the EIFS and disposing of it without alerting them or giving them an opportunity to determine if the systems, as they were actually installed, were defective. This court is of course free to affirm a judgment on any ground appearing in the record. *See United States v. Smith*, 395 F.3d 516, 519 (4th Cir. 2005). But, because the district court has not yet addressed the spoliation issue, we will refrain from ruling on it at this time. *See Silvestri v. Gen. Motors Corp.*, 210 F.3d 240, 245 (4th Cir. 2000) (holding that the question of whether a case should be dismissed because of spoliation is one for the district court to address in the first instance).

---

[6]Toll also notes that Imperial "provided Toll with a separate materials warranty *from Dryvit* for the EIFS product." Br. of Appellant at 32 (emphasis added). Toll does not explain, however, how breach of a warranty "from Dryvit" could cause liability on the part of Imperial. Toll finally maintains that the written agreement that all materials would be as specified and the warranty that Imperial provided from Dryvit gave rise to an implied warranty that the materials provided "would be fit for the ordinary purpose of which the EIFS would be used." *Id.* Because Toll provides no further explanation or legal support for this assertion, we do not address it. *See* Fed. R. App. P. 28(a)(9)(A) (providing that the appellant's brief must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *11126 Baltimore Blvd., Inc. v. Prince George's County*, 58 F.3d 988, 993 n.7 (4th Cir. 1995) (en banc) (declining to consider arguments for failure to comply with Rule 28).

## V.

In sum, for the foregoing reasons, we affirm the order granting summary judgment against Toll on its claims under the CPLA and its indemnification agreement with Imperial, but otherwise reverse the order and remand for further proceedings consistent with this decision.[7]

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED*

NIEMEYER, Circuit Judge, dissenting:

Because the majority opinion is based on issues that are, in my view, irrelevant to the proper disposition of this case, I cannot join it. I agree with the judgment of the district court because Toll Brothers failed to submit sufficient evidence to create a genuine issue of material fact as to whether the synthetic stucco exterior insulation finish system ("EIFS") manufactured by Dryvit Systems and installed by Imperial Stucco caused any actual injury or threatened to cause imminent damage to the seven houses involved in this case.

Toll Brothers commenced this action to recover from Dryvit and Imperial reimbursement of the approximately $500,000 that Toll Brothers incurred to reclad seven houses in its Newtown Chase development in Connecticut. Toll Brothers reclad the houses because of a fear of potential claims. It had already been sued for its use of EIFS in other developments, and it was facing the threat of a lawsuit by the Newtown Chase homeowners for misrepresenting the EIFS as real stucco. Even if there was a defect in the design or manufacture of the EIFS installed on the seven houses, the system had not failed, nor did it cause any actual damage to the houses, nor was damage imminent. Although Toll Brothers may have had sound *business* reasons for replacing the EIFS when it did, it was under no *legal* obligation to do so other than to fulfill its legal obligation not to misrepresent. When Toll Brothers replaced the EIFS, therefore, it acted as a legal volunteer vis-á-vis Dryvit and Imperial and therefore may not recover its costs in this action.

---

[7]We do not purport to decide any issues not explicitly addressed in this decision relating to Appellees' entitlement to summary judgment.

The majority devotes significant attention to whether Toll Brothers would be liable for its own alleged misrepresentations, reasoning that if it was not, it would then have a legitimate claim against Dryvit and Imperial. *See ante* at 5-7. This conclusion, however, does not follow; indeed, the validity of the homeowners' misrepresentation claim is irrelevant to the issues before this court. The dispositive principle in this case is limited to the fact that the EIFS did not cause any damage to the seven houses so as to create liability for Dryvit and Imperial.

Although Toll Brothers originally claimed, and the majority accepted, that damage to the houses actually resulted, this is not supported by the evidence. *See ante* at 6 (accepting, in the summary judgment calculus, Toll Brothers' affidavit that recladding "was undertaken in an effort to prevent *further damage* to the homes" (emphasis added)). Indeed, the summary judgment record contains *no* evidence that any homeowner actually sustained damage, or even that any homeowner would more likely than not sustain damage in the future — facts that Toll Brothers ultimately conceded. Moreover, before recladding the houses, Toll Brothers conducted no inspection of the originally installed cladding, and it did not report finding any defects in the EIFS material or installation when performing the recladding operation.

The majority seeks to overcome this fatal fact by suggesting that *Dryvit does "not deny* that Toll faced potential future liability, by warranty or otherwise, for damage caused to homes by Dryvit's system." *Ante* at 8 (emphasis added). This statement either mischaracterizes Dryvit's position or misstates Connecticut law.

If the majority means that future damage was probable, then the majority misrepresents both Dryvit's position and the evidence. Dryvit does not concede the probability of future damage. In its brief, it argues, "Fear of future problems that *might or might not even occur* is not actionable or actual injury, and is insufficient to withstand summary judgment." Appellee's Br. at 15 (emphasis added). Moreover, Dryvit represented to the court that only a small percentage of applications of its EIFS nationwide has failed and caused damage.

If, on the other hand, the majority is resting its position on the potential or mere possibility of future injury, Dryvit is still not liable.

Recovery for potential or merely possible future damage is not permitted under Connecticut law. Conn. Gen. Stat. Ann. §§ 52-572m and 572n; *Milford Power Co. v. Alstom Power Co.*, 263 Conn. 616, 627, 822 A.2d 196, 202 (2003); *Potter v. Chicago Pneumatic Tool Co.*, 241 Conn. 199, 214, 694 A.2d 1319, 1330 (1997); *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603 (2d Cir. 1996).

This is not a case where the evidence shows that injury is imminent, inevitable, or even probable. While there is evidence in the record that the EIFS was negligently designed, there is *no evidence* that injury has resulted in or will result in every case, or even in most cases, where the EIFS has been applied. Indeed, the evidence is that EIFS has failed in only a small percentage of cases. Toll Brothers cannot claim that it acted reasonably in expending $500,000 to avoid this small possibility of damage when none has occurred over several years and no evidence exists to indicate that damage will occur. This is fatal to all claims asserted by Toll Brothers, because the necessary element of injury is missing. Any injury is merely speculative.

The decision of the district court to dismiss Toll Brothers' claims against Dryvit and Imperial was correct, and I would affirm its judgment.